## ETIE'S HEIRS *vs.* CADE ET AL.

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, THE JUDGE OF THE SEVENTH PRESIDING.

The delivery of titles is a legal presumption of mandate; but the presumption thus arising may be repelled by proof that the papers were delivered to the agent for another purpose.

Since the adoption of the Louisiana Code, the presence of an under tutor is not required by law, at the making of an inventory of the succession belonging to the minor heirs he is appointed to represent.

An advertisement of a sale at thirty days notice will suffice, if published once a week during that time; but if the newspaper is omitted to be published a week or two during this interval, the law does not require the advertisement to be made anew or the sale to stop.

In sales at ten or thirty days notice, it is sufficient if the advertisement be placed on either the court house or church door; both is not required.

Purchasers at judicial sales cannot be affected by the mistakes of agents in carrying into execution judgements, at a time not contemplated by their principals.

The plaintiffs, as the legal heirs of Pierre Etie, deceased, sue Robert Cade and James T. White, for the recovery of a tract of land, twelve and a half arpens by forty, on each side of the bayou Vermillion. Pierre Etie, the ancestor and

person from whom the plaintiffs derive their claim, died in the parish of St. Mary, in 1821, leaving this land as a part of his succession. In December of this year, a family meeting was held, of the heirs and legal representatives of the deceased, at which it was determined, and accordingly ordered, that the whole of the succession should be sold at public auction, on certain terms and credits specified. The land now claimed was ordered to be sold, on the petition of E. Simon, Esq., attorney for the plaintiffs, by the parish judge of St. Mary, on the terms agreed on by the family meeting. This order was granted April 25, 1826. Mr. A. Dumartrait, acted as agent of plaintiffs, under a verbal authority, and directed the parish judge of Lafayette, where the land was situated, to sell it at public auction. It was advertised in the Attakapas Gazette and at the church door, in the parish of Lafayette, to be sold on the 26th June, 1826, and postponed to 26th July following, for want of bidders; the sale, again postponed until January 25th, 1827, and being duly advertised each time, as before, it was adjudicated to John Greig, for five hundred and twenty dollars. On the same day, Greig conveyed one undivided half of the land to B. C. Crow. In September, 1828, Greig and Crow sold and conveyed the whole tract to Robert Cade and James T. White, for five thousand dollars, payable in four annual instalments.

The petitioners now sue to recover back this land; alleging the sale of it, by the parish judge of Lafayette, to be made without legal authority and the forms prescribed by law. They allege, that the petition presented by E. Simon, Esq., on which the order to sell the land was made, was obtained without their authority, knowledge, or consent; and that A. Dumartrait was not their legal agent, or attorney in fact, to sell, or in any wise dispose of this land. They pray that the sale, made by the parish judge of Lafayette, be declared null and void, and that they be quieted in their title to the land; and also for two thousand dollars in damages.

The defendants, Cade and White, set up the sale from Crow and Greig to them, and called the latter in warranty.

the latter answer, and rely on the sale of the parish judge to them, &c.

There was judgement, stating that this property was originally vested in Pierre Etie, deceased, and did not make a part of the community between said Etie and his wife; and that all the forms of law, required to make a good and sufficient title in favor of the purchasers, have been complied with. They were decreed to be for ever quieted in their possession; the plaintiffs to pay all costs.

E. Simon, sworn as a witness for plaintiffs, says, the petition signed by him for the appraisement and sale of this tract of land, in the name of the plaintiffs, was drawn by him at the request of A. Dumartrait, who said he was their agent. Witness never had any communication with plaintiffs on the subject.

A. Dumartrait sworn, says, he had no written authority from the plaintiffs, to sell the land in contest, except a letter from one of them: that he had verbal authority from the plaintiffs, to settle Pierre Etie's succession, and had acted as their agent ever since 1824. (This evidence objected to.) At the family meeting, ordering the sale of the succession, N. Loisel was appointed under tutor to one of the heirs under age.

One witness stated the land in dispute worth two thousand dollars in May, 1828. Another says, he would not have given five hundred dollars for it, about the time of the sale.

A third says, he knew a Mr. Rice, who intended to have given one thousand dollars for it, but did not reach the place of sale in time. The title to the land was clear.

*Garland*, for plaintiffs:

1. No person or public officer can sell and convey a good title to the property of another, unless authorized by express law, which must be strictly pursued and all its formalities complied with; especially as regards the successions or property of minors. If the sales are otherwise, they are null. 6 *Whea-*

*ton,* 116, 277. 11 *Martin,* 607. 1 *Martin, N. S.* 324, 628. 9 *Martin,* 489. 10 *Martin,* 283.

2. There is no petition, in this case, to the judge, requesting him to call the family council, or order to do so, at which this sale was ordered. *Old C. Code, p.* 62, *art.* 21.

3. The family meeting did not first appoint an under tutor to the minor heirs, previous to ordering the sale; and no under tutor was present at the making the inventory. 3 *Martin's Dig.* 128, §22. 132, §19. 1 *Martin, N. S.* 462.

4. The order of the parish judge of St. Mary, on the petition of E. Simon, Esq., ordering the sale in 1826, is null, because it was procured through the agency of A. Dumartrait, without the knowledge of the plaintiffs.

5. A. Dumartrait acted under a verbal power from some of the heirs, given generally, which was insufficient to authorize the sale of land.

6. When the mandate is given generally, it only confers a power of administration. *L. Code,* 2960. The power to sell must be express. *Ibid.* 2966.

7. The agent cannot exceed the limits of his appointment; and under a general power he cannot sell a slave. *L. Code,* 2979. 10 *Martin,* 679. 1 *Martin, N. S.* 244.

8. An agent, empowered to pay and receive the debts of a succession, cannot accept or receive notices of transfer of debts against it. 8 *Martin, N. S.* 212.

9. A power to sign the constituent's name, in any transaction the attorney may deem necessary for his principal, does not authorize him to endorse a note, and a power to sell does not authorize a *dation en payement.* 1 *Martin, N. S.* 608, 444.

10. The authority of an attorney may be questioned and denied by the parties whose names he used, when his acts are relied on to make out a chain of title, depriving them of their property.

11. The order of the Probate Court, made upon such petition, may be impeached, and its validity inquired into, when set up as the basis of title. *C. P.* 99. 2 *L. Rep.* 137, 147. *C. P.* 608, 610.

12. The acts of neither the agent or attorney have been ratified by the heirs, which is required to be express, and made in the same manner as the original act, unless the principal voluntarily agreed to it. *L. C.* 2251–2, 2990.

13. The inventory of this land, made in Lafayette, has never been recorded in the parish of St. Mary, where the succession of Etie was opened, nor has any return or evidence of it been given. *L. C.* 1103.

14. The sale was illegally made by the parish judge of Lafayette; not being advertised according to law. 8 *Martin, N. S.* 246. *L. C.* 336, 1108.

*Brownson* and *Crow* argued on behalf of the defendants.

PORTER, J., delivered the opinion of the court.

The plaintiffs state they are owners of a tract of land, of which the defendants are illegally in possession; that the land was sold by the judge of probates of the parish of Lafayette, under an order of the Court of Probates, of St. Mary parish. That the petition on which this order was obtained, was filed without the knowledge or authority of the petitioners, and is not binding on them. They also pray for possession of the premises, and to be quieted in their title.

The defendants pleaded the general issue, and averred they purchased from certain persons, viz: B. C. Crow and J. Greig; and prayed they might be cited in warranty.

Crow answered, by denying any title in the plaintiffs, and alleging that he purchased from Greig. Greig admitted he had sold the land to the persons calling him in warranty; and averred that he had bought it at a sale by public auction, in the parish of Lafayette, on the 25th January, 1827; that the sale took place in virtue of an order of the Court of Probates of the parish of St. Mary; that it was conformable to law, and that he purchased in good faith, and not with any view to defraud the petitioners.

On these issues the parties went to trial in the court below. There was judgement for the defendants, and the plaintiffs appealed.

The sale appears to have been fairly conducted, and there is no allegation of fraud, or intention to injure the petitioners, either in the persons who procured the order of the Court of Probates, the judge who sold, or the defendants who purchased the premises. But the land, since the time of sale, has greatly risen in value; and the plaintiffs allege, that the alienation took place without any authority from them, and contrary to the forms of law in such cases provided.

So far back as the year 1822, a family meeting took place, before the judge of St. Mary, and which advised a sale of all the property, real and personal, of which the ancestor of the plaintiffs died possessed. Under this advice, the judge ordered the sale; but after several attempts, the tract now in dispute could not be disposed of, for want of bidders; and it remained the property of the succession up to the year 1826.

In that year, a petition was presented to the judge of St. Mary, signed by E. Simon, Esq., a duly licensed attorney of the courts of this state. The petition is in the name of the heirs who are now plaintiffs. It refers to the previous deliberations of the family; states the property had not been yet sold, and that a sale is necessary to pay the debts. It asks the judge for an order for a new appraisement and sale of the property. Both were given by the judge, according to the prayer of the petition, and under this order the sale now attacked took place.

Evidence was offered in the court below, to show that the attorney had been employed by an agent who was appointed with a general authority, but was not empowered to sell the property belonging to the estate; and the heirs knew nothing of the proceeding. This evidence was rejected, as contradicting the record, and several questions, in relation to the power of attorneys at law, and the effect of their acts in binding the persons they profess to represent in courts of justice, have been fully and earnestly argued. We find it

unnecessary to decide them.   The evidence comes up in the
record subject to exceptions, and it convinces us the heirs had
a knowledge of the proceedings by which the agent sought
to procure a judicial sale of the land.   In the first cause be-
tween the parties, in relation to the matter now under litigation,
which terminated by a nonsuit (the record of which is made
evidence in this case), the agent, who was called as witness by
the plaintiffs, swore that he communicated the fact of the
failure to sell, in the two first exposures, to the heirs.   On the
trial in this case, he deposed he communicated the fact to the
mother and one of them.   The property was advertised eight
or nine times, in a newspaper published in the county they
lived in; and more than all, it appears the title papers for the
land were placed in his hands, and by him forwarded to the
purchaser.

*Pothier* states it to be a legal presumption that a delivery
of titles is a mandate.   This presumption, indeed, may be
destroyed by proof, if the papers were delivered to the agent
for another purpose.   But no such proof is offered here.   It
may be true, that courts of justice can examine into the
authority of attorneys at law; and it is possible the judge-
ment rendered where they were not properly empowered,
may be set aside.   But it is obvious to what consequences
such a doctrine might lead.   And how strict and full the
power should be, which would authorize a sentence of nullity
on this ground.   The communications between client and
counsel are generally private.   There is not one case in ten
where the attorney is empowered in writing.   Third parties
are entire strangers to the circumstances which led to, or
accompanied his engagement; and such evidence as was
given here is as satisfactory as could be expected.   *Poth. on
Ob.* 849.

It is next objected, the inventory was not regularly made,
as the under tutor did not assist at it.   By the 329th article
of the Louisiana Code, his presence is not necessary.   But it
is contended the 54th article of the old Code, page 68, was
still in force, and unrepealed at the time the inventory was

The delivery of titles is a legal presumption of mandate; but the presumption thus arising may be repelled by proof that the papers were delivered to the agent for another purpose.

Since the adoption of the Louisiana Code, the presence of an under tutor is not required by law at the making of an inventory of the succession belonging to the minor heirs he is appointed to represent.

Western Dis.
Sept. 1832.

Etie's heirs
vs.
Cade et al.

made. The French text of that article did not require the presence of the under tutor; the English did. The new Code adopted the former. We think this was special legislation on this matter, which, according to the 3521 article of the Louisiana Code, repealed the provisions in the English text of article 54, of the old Code.

Another informality is urged. The property, it is said, was not advertised regularly in the newspaper. If it were not, it is very questionable whether the major heirs can take ad. vantage of this neglect of their agents. But we think it was legally advertised. By the 1110 article of the Code of Lou-

*An advertisement of a sale at thirty days notice will suffice, if published once a week during that time; but if the newspaper is omitted to be published a week or two during this interval, the law does not require the advertisement to be made anew or the sale to stop.*

isiana, it is sufficient if the advertisement in sales at ten days, be published as often as the gazette appears during that time. In those cases where thirty days notice is required, it is true it is stated, it will suffice if they are published once a week during that time; but where the argument *contrario senseu* is drawn from this provision, and it is attempted to show sales are null, if not advertised once a week during that period, it must be received without at least the limitation of a gazette being published each week in the month. Here there was an interval of one week, in which the newspaper was not printed; consequently, the advertisement could not be inserted. We know of no law which requires the Parish Judge to stop proceedings on that account; commence advertising anew, and expose himself to the same contingencies the second time. The law requires what is practicable, to advertise if there be a paper printed, in which the notice can be inserted; and, in our judgement, it requires nothing more.

The objection as to the want of placing the advertisement on both church and court-house doors, is removed by the 1108th article of the Louisiana Code, which makes it sufficient

*In sales at ten or thirty days notice, it is sufficient if the advertisement be placed on either the court house or church door; both is not required.*

to affix them on either. The law being passed since the adoption of the constitution, the English text must control the French.

It was contended the Parish Judge, acting as auctioneer, put up this property for sale, when he was not authorized to do so by the plaintiffs or their agents; he had twice announced

it by the order of the latter, and no positive orders counter- manding a further exposure, were given to him. But it is

our opinion, that purchasers at judicial sales, cannot be effected by the mistakes which agents may make in ordering judgements to be carried into execution at a time not contemplated by their principals.

In the petition, it is stated one of the heirs was a minor at the time of the sale, and it is necessary to examine the legality of the proceedings in reference to him. The petition to the Judge of Probates, for the order to sell the property, refers to the deliberations of the family meeting, as authorizing such an order. They are attacked principally on the ground, that they were not preceded by a petition, to call the meeting. Whether this be such an irregularity as would annul the proceeding, we need not inquire; for all the parties signed the deliberations, and showed they sanctioned and approved of the meeting; the widow appeared as representative of the minors, and signed it; and the heirs of age, affixed their names to it. We do not see the force of the objection made in relation to the tutor; he signs the proceedings in that character, and we must presume, have acted as such, as there were a sufficient number of friends and relations independent of him, to form the meeting; his appointment is evidenced by an act made the same day, and posterior to the advice of the family meeting. But the appointment was reduced to writing and recorded subsequently, it furnishes no reason to assume, that it was not made earlier in the day; more particularly when we see the tutor previously signed the deliberations as such. These proceedings, we think, formed a proper basis for the petition subsequently addressed to the judge of probates, to order a sale of the property, for the payment of the debts due by the succession; and it is clearly proved, the tutrix of the minor knew of the petition filed by the attorney at law for this purpose, and sanctioned it. *Moreau's Dig. vol.* 2, *p.* 88, §5.

It is, therefore, ordered, adjudged, and decreed, that the judgement of the District Court be affirmed, with costs.