CASE 23—ACTION FOR A MANDAMUS—DEC. 5.

# Bank of Columbia v. Taylor County, &c.

APPEAL FROM TAYLOR CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS. REVERSED.

COUNTIES—LIMITATION OF INDEBTEDNESS—SETTLEMENT OF DEBT CRE-
ATED PRIOR TO ADOPTION OF CONSTITUTION—CONCLUSIVENESS OF
JUDGMENT.

Held: 1. Const. section 157, providing that the tax rate of a county
shall not exceed a certain limit unless it should be necessary to
enable such county "to pay the interest on, and provide a sink-
ing fund for the extinction of an indebtedness contracted be-
fore the adoption of this Constitution," and Id., section 158,
limiting the indebtedness of counties, and providing that any
county "may contract an indebtedness in excess of such lim-
itations when the same has been authorized under laws in
force prior to the adoption of this Constitution," should be
construed together, and therefore, under an act passed prior
to the adoption of the Constitution, empowering a county to
borrow money, not exceeding $20,000, and to execute a bond or
promissory note therefor to enable it to effect a compromise
of its bonded debt, the county may levy a tax to pay a note for
money borrowed for that purpose after the adoption of the
Constitution, though the tax rate is thus made to exceed the
limit prescribed by the Constitution.
2. While the county might not borrow more than $20,000 at one
time, it might borrow money from time to time as it was
needed to compromise its bonded debt, provided the amount
of the loans outstanding at one time was not over $20,000; and
its power to borrow money for that purpose was not affected
by the fact that it had previously borrowed as much as $20-
000, which had been repaid.
3. In an action against a county for a mandamus to compel de-
fendant to levy a tax to pay a judgment against it, the judg-
ment, not having been appealed from, is conclusive as to the
justice of the debt, and no defense which should have been
asserted in the action in which the judgment was rendered can
be relied on.

GARNETT & GARNETT, ATTORNEYS FOR APPELLANT.

On April 1, 1871, Taylor county issued its bonds for $250,-000, due twenty years after date, bearing interest at six per cent from date, payable semi-annually, to pay its subscription to the Cumberland and Ohio Railroad. The bonds were sold and the proceeds used to pay the subscription. The county paid the interest for a few years and then defaulted and failed to pay either interest or principal.

The road was completed through the county in 1879. On March 18, 1878, the Legislature passed an act empowering the county to compromise its debts, issue bonds and levy and collect taxes to pay same (Acts 1878, vol. 1, p. 554.)

Under this act, and acts amendatory thereof, at the March term, 1888 of the Taylor county court, all the justices being present and concurring, an order was made authorizing and directing the county judge to borrow the money and execute the bonds or notes of the county therefor, and on March 29, 1894, Taylor county borrowed from appellant, Bank of Columbia, $4,120, and executed its note therefor, signed by the county judge and countersigned by the county clerk, as authorized by said act and the order of the court. At the same time there was deposited with the appellant bank as collateral security $8,000 of the bonds of said county as authorized by said act. The county paid the interest on this note up to March 25, 1896. On December 23, 1896, the appellant brought suit in the Taylor circuit court against Taylor county seeking to recover a judgment for its debt and asserting a lien on the $8,000 of bonds deposited as security. The court gave plaintiff a personal judgment for the debt, but sustained a demurrer to so much of the petition as sought to enforce a lien on the bonds, the court holding that the county judge had no authority to deposit the bonds as collateral security. An execution issued on plaintiff's judgment having been returned by the elisor of the county "no property found," this suit was instituted by the plaintiff against the county, the fiscal court, and all the justices, seeking a writ of mandamus, against them requiring them to levy a tax on the taxable property of Taylor county, sufficient to pay its judgment. This suit was not filed, however, until after the plaintiff had entered motion at the March term, 1898, and again at the March term, 1899 of the Taylor county court, and also the fiscal court of said county after due notice first given, to make a levy to pay said judgment, and which said courts failed to do. On the first hearing of this suit the court awarded the mandamus sought, but on a motion for a new trial made by the defendants, the case was continued until the next term

Bank of Columbia v. Taylor County, &c.

of the court, when the court set aside its former judgment, granted the new trial, and sustained defendant's demurrer to plaintiff's petition, whereupon the plaintiff by leave of court filed an amended petition to which the demurrer was refiled, and sustained by the court, and plaintiff declining to plead further, the court dismissed its petition, and to reverse this judgment this appeal is filed.

The question now before this court on this appeal, is "Does the petition as amended, state facts sufficient to constitute a. cause of action in favor of the plaintiffs against the defend-- ants and entitle plaintiff to a judgment awarding it a writ of mandamus?

On the demurrer to the petition it was contended by coun- sel for the defendant, and it was so held by the court, that, as. the money was borrowed from the bank and the note therefor executed after the adoption of the new Constitution, that the debt came within and was embraced by the prohibition con- tained in sections 157-158 of the Constitution, and for that. reason and on that ground the court sustained the demurrer,. and refused the motion for mandamus.

### AUTHORITIES CITED.

Acts 1878 vol. 1, page 554; Acts 1881, vol. 1, p. 558; Acts 1887, vol. 1, p. 344. The judgment sued on is a final judgment. Spaulding's Admr. v. Wathen, 7 Bush, 659; Dawson v. Litsey, 10 Bush, 408; Clarke v. Rhodes, 12 Bush, 13; Harpending's Exrs. v. Wulie, 13 Bush, 158; Davis v. McCorkle, 14 Bush, 746.

Mandamus the proper remedy. Elliott County v. Kitchen, 14 Bush, 299; Feland v. Morton, 10 Ky. Law Rep., 217; Cooke v. Lyon Co., 6 Ky. Law Rep., 360, Fleming v. Dure, 20 Ky. Law Rep., 689; Muhlenberg County v. Morehead, 20 Ky. Law Rep., 376.

### CONSTITUTIONAL QUESTION.

Constitution, secs. 157 and 158; Holzhauer v. City of New- port, 94 Ky., 396; City of Lexington v. ———, 96 Ky., 258; Far- son Leech & Co. v. Board Comrs. Sinking Fund, 97 Ky., 120.

B. A. RICE, ATTORNEY FOR APPELLEES.

(1) Acts referred to. Act of 1878, vol. 1, page 554, Act 1887, vol. 1, page 344.

(2) Constitutional provisions. Constitution of Ky., sections 157, 158 and 162.

(3) The petition was fatally defective. Atchison, County Judge v. Lucas, Duncan v. Same, 83 Ky., 460; 14 Bush., 645;

Wortham v. Grayson Co., 13 Bush, 53; McLean Co. Precinct v. Dep. Bank of Owensboro, 81 Ky., 254, (5 Ky. Law Rep., 97) Lowe v. Phelps, 14 Bush, 642.

(4)    The court had no jurisdiction to enforce the contract. Harrison v. Com., 83 Ky., 126; Com. v. Gayle, 10 Bush, 448; Bailey v. Com., 11 Bush, 688; Williams v. Com., 78 Ky., 93; Barbour v. City of Louisville, 83 Ky., 95; Dazey v. Liken, 1 Duv., 403; Pendleton v. Pendleton, 6 Bush, 469; C. & O. Ry. Co. v. Barren Co., 10 Bush, 604.

(5)    The original judgment was void and appellees had the right to resist its enforcement. Prince v. Antle, 90 Ky., 138; (11 Ky. Law Rep., 927); Spencer v. Pearson, 89 Ky., 577 (11 Ky. Law Rep., 769); Stephens v. Deering, 10 Ky. Law Rep., 393; Omhoney v. Bullock, 97 Ky., 774.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

On March 18, 1878, an act was passed by the General Assembly for the benefit of Taylor county empowering it to compromise its debt growing out of its subscription to the building of the Cumberland and Ohio Railroad by issuing new bonds not exceeding in amount $125,000, and settling off the old bonds at rates not to exceed 50 cents on the dollar.    The county court was authorized to levy a tax annually to meet the interest and create a sinking fund to pay the principal of these bonds at maturity.    See 1 Acts 1878, p. 554.    By an amendatory act of February 27, 1882, it was authorized to issue $150,000 of new bonds, and, in the event judgment was rendered on any such bonds or coupons, power was conferred on the court to enforce a lien on all property in the county.    See 1 Acts 1881, p. 558.    By another amendatory act, of February 17, 1888, to enable it to effect and complete a compromise of its bonded debt, the county was empowered to borrow money, the sum borrowed by it not to exceed the sum of $20,000, and execute a bond or bonds, promissory note, or other evidences of debt, and to deposit as collateral security county bonds issued under the act of March 18, 1878, in

the proportion of $2 in bonds for each dollar borrowed. By this act it was also provided that the county court should, at the time of its annual levy to pay the interest on the bonds referred to, levy an amount of taxes on the taxable property of the county subject to taxation sufficient to pay the interest on the funded debt and the interest and principal of the money borrowed, not exceeding $1.50 on each $100 worth of taxable property. See 1 Acts 1887-88, p. 344. On March 29, 1894, the county borrowed from appellant, the Bank of Columbia, $4,000, and executed its note for $4,120; the county judge who made the loan depositing with the bank $8,000 of the county bonds. On the 23d day of December, 1896, the bank filed suit against the county to recover on the note the balance unpaid, and to enforc its lien on the bonds. At the April term following an answer was filed by the county, on which judgment was rendered against the county on the note for the amount claimed, but as to the lien on the bonds the case was continued, and at a subsequent term the petition was dismissed so far as it sought a lien on the bonds. The bank after this moved the fiscal court to make a levy to pay its judgment. This they declined to do, and the bank then filed this suit for a mandamus against the members of the fiscal court compelling them to make a levy for this purpose. They filed a demurrer to the petition, which was overruled. They then filed an answer, to which a demurrer was sustained, and, they not pleading further, judgment was then entered as prayed in the petition; but on motion for rehearing this was set aside, and the demurrer to the petition was sustained, and the action dismissed. The ground of the ruling of the court appears to have been that, the money having been borrowed since the adoption of the present Constitution, power to make

the levy is taken away by section 157.    Section 157 and
section 158 are as follows:

"The tax rate of cities, towns, counties, taxing districts
and other municipalities, for other than school purposes,
shall not, at any time, exceed the following rates upon the
value of the taxable property therein, viz.:    For all towns
or cities having a population of fifteen thousand or more,
one dollar and fifty cents on the hundred dollars; for all
towns or cities having less than fifteen thousand and not
less than ten thousand, one dollar on the hundred dollars;
for all towns or cities having less than ten thousand, sev-
enty-five cents on the hundred dollars; and for counties and
taxing districts, fifty cents on the hundred dollars; unless it
should be necessary to enable such city, town, county, or
taxing district to pay the interest on, and provide a sink-
ing fund for the extinction of indebtedness contracted be-
for the adoption of the Constitution.    No county, city,
town, taxing district or other municipality shall be author-
ized or permitted to become indebted in any manner or
for an ypurpose, to an amount exceeding, in any year, the
income and revenue provided for such year, without the
assent of two-thirds of the voters thereof, voting at an
election to be held for that purpose; and any indebtedness
contracted in violation of this section shall be void.    Nor
shall such contract be enforceable by the person with
whom made; nor shall such municipality ever be authorized
to assume the same."    Section 157.

"The respective cities, towns, counties, taxing districts
and municipalities shall not be authorized or permitted to
incur indebtedness to an amount, including existing in-
debtedness, in the aggregate exceeding the following
named maximum percentages on the value of the taxable
property therein, to be estimated by the assessment next

before the last assessment previous to the incurring of the indebtedness, viz.:    Cities of the first and second classes, and of the third class having a population exceeding fifteen thousand, ten per centum; cities of the third class having a population of less than fifteen thousand, and cities and towns of the fourth class, five per centum; cities and towns of the fifth and sixth classes, three per centum; and counties, taxing districts and other municipalities, two per centum; provided, any city, town, taxing district, or other municipality may contract an indebtedness in excess of such limitations when the same has been authorized under laws in force prior to the adoption of this Constitution, or when necessary for the completion of and payment for a public improvement undertaken and not completed and paid for at the time of the adoption of this Constitution; and provided further, if, at the time of the adoption of this Constitution, the aggregate indebtedness, bonded or floating, of any city, town, county, taxing district, or other municipality, including that which it has been or may be authorized to contract as herein provided, shall exceed the list herein prescribed, then no such city or town shall be authorized or permitted to increase its indebtedness in an amount exceeding two per centum, and no such county, taxing district or other municipality, in an amount exceeding one per centum, in the aggregate upon the value of the taxable property therein, to be ascertained as herein provided, until the aggregate of its indebtedness shall have been reduced below the limit herein fixed, and thereafter it shall not exceed the limit, unless in case of emergency, the public health or safety should so require. .   Nothing herein shall prevent the issue of renewal bonds, or bonds to fund the floating indebtedness of any city, town, county, taxing district or other municipality."     Section 158.

It will be observed that section 157 contains this express
·exception: "Unless it should be necessary to enable such
city, town, county, or taxing district to pay the interest on
·and provide a sinking fund for the extinction of the indebted-
ness contracted before the adoption of this Constitution."
And in section 158, providing the limit of indebtedness,
there is also this exception: "Any city, town, county,
·taxing district or other municipality may contract an in-
debtedness in excess of such limitation when the same has
been authorized under laws in force prior to the adoption
·of this Constitution." In construing these words it was
·held in Farson v. Board, 97 Ky., 119, 16 R., 856 (30 S. W.,
17), that bonds may be issued for the purpose
of retiring outstanding bonds, and are not
·to be considered as an increase of the city's
indebtedness in estimating the amount of the in-
·debtedness it may incur. Section 158 concludes with
these words: "Nothing herein shall prevent the issue of
renewal bonds or bonds to fund the floating indebtedness
·of any city, town, county, or taxing district or other muni-
cipality." The money was borrowed of appellant to com-
promise the outstanding bonds of the county which were
issued before the adoption of the Constitution, and was ap-
·plied to that purpose. The indebtedness to appellant was
·created under the laws in force prior to the adoption of the
Constitution. It was not a new debt. It was simply a
new form of the old debt, which was reduced 50 cents to
the dollar in the change of form. The power which is
expressly given by the Constitution to contract an indebt-
·edness of this kind under laws in force prior to its adop-
tion and authorizing the issue of renewal bonds must be
·read in connection with section 157, excepting out of the

operation of that section a tax levied to pay the interest on indebtedness contracted before the adoption of the Constitution or for the extinction of the debt.   Taking the two sections together, there seems to us no doubt that the inhibitions referred to do not apply to the debt of appellant which was regularly created under laws in force before the adoption of the Constitution to fund an old debt created years before.   It was not the purpose of the Constitution to prevent the municipalities of the State from meeting their just obligations contracted before its adoption, or to deprive them of ability to  fund  and  settle these obligations under existing laws.   Smith v. Mercer Co., (20 Ky. L. R., 812) (47 S. W., 596); Richmond Cemetery Co. v. Sullivan (20 Ky. L. R., 1028) (47 S. W., 1079).   It appears from the record that some years ago the county borrowed about $5,000, and the treasurer advanced  to  it  something  over $15,000, making, with the other loans, the sum of $20,000 borrowed; but all this money had been paid back before the loan was made by appellant.   The purpose of the act was to enable the county to compromise its bonded debt.   It could not borrow more than $20,000 at one time, but it might borrow money from time to time as it was needed for this purpose, provided the amount of the loans outstanding at any time was not over $20,000.   At the time the loan was made by appellant no other borrowed money was owing by the county, and its power to borrow the $4,000 from appellant was not affected by the fact that it had previously borrowed other sums, which had been repaid.   The judgment against the county is conclusive on it as to the justice of the debt. That judgment has not been appealed from.   The court had jurisdiction of the parties and the subject matter, and

no defense which should have been asserted there can be relied on in this action, for the judgment is not void.

A judgment for a debt embracing usury stands on a different plane, so far as the usury is concerned, from other judgments, and will not be enforced to the extent of the usury, for the reason that the usury may be recovered after it has been paid. The court, therefore, should have ordered the fiscal court to make a levy sufficient to pay the debt of $4,000, with interest at 6 per cent., subject to the credits that had been paid.

Judgment reversed, and cause remanded for a judgment as above indicated.