### Kimbley v. City of Owensboro, et al.

(Decided June 22, 1917.)

## Appeal from Daviess Circuit Court.

1. Municipal Corporations—Cities of the Third Class—Sewers—Indebtedness—General Taxation—Power.—Under Kentucky Statutes, section 3290, providing that common councils of cities of the third class may construct or reconstruct, maintain, alter, repair or change systems of sewers in such manner and at such time as they shall, by ordinance, declare, either by general taxation or at the cost of the property owners, a city of the third class has the power to incur an indebtedness for the purpose of repairing and reconstructing its present sewage system, and for the purpose of constructing and installing additional sewers and to liquidate such indebtedness by general taxation.

2. Municipal Corporations—Cities of the Third Class—Sewers—Bonds—Power.—Under Kentucky Statutes, section 3284, providing that: "Subject to the limitations imposed by the Constitution and this act, the council shall have the power to contract debts and to borrow money, and to issue the bonds of the city therefor, and to control the finances and the property of the city," a city of the third class has the power to issue bonds for the purpose of repairing, constructing and reconstructing its system of sewers.

3. Municipal Corporations—Cities of the Third Class—Power to Submit Bond Issue to Vote of People.—Under constitution, section 157, providing that no city shall be authorized or permitted to become indebted to an amount exceeding, in any year, the income and revenue provided for such year, "without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose," and Kentucky Statutes, section 3284, providing that the council of a city of the third class shall have power to contract debts, borrow money and issue bonds, "subject to the limitations imposed by the constitution," cities of the third class have the implied power to provide by ordinance for the submission of a bond issue to a vote of the people, though

the general rule is that elections cannot be held without affirmative constitutional or statutory authority.

4. Municipal Corporations—Election—Bond Issue—Notice—Sufficiency.—Under a municipal ordinance providing that the mayor should cause notice of a bond issue election to be published in some daily newspaper published in the city for not less than fifteen days prior to the date of said election, the publication of such notice for seventeen consecutive days, Mondays excepted, next preceding the election, in one paper published daily except on Mondays, and for seventeen consecutive days, Saturdays excepted, next preceding the election, in another paper published daily except on Saturdays, is sufficient.

5. Municipal Corporations — Limitation of Indebtedness — Debt Created Prior to Adoption of Constitution.—In determining whether a proposed indebtedness, together with the existing indebtedness of a city, exceeds ten per cent. of its assessable proprty within the meaning of section 158 of the Constitution, an indebtedness created prior to the adoption of the Constitution should not be considered.

6. Municipal Corporations—Limitation of Indebtedness—Allegations of Answer—Sufficiency.—In an action to enjoin an issue of bonds by a city of the third class having a population of over fifteen thousand, allegations of the answer considered, and held to show that the proposed indebtedness, together with the existing indebtedness of the city, did not exceed ten per cent. of the value of its taxable property, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness, as provided by section 158 of the constitution.

BEN D. RINGO and LAVEGA CLEMENTS for appellant.

W. P. SANDIDGE and JOHN A. DEAN, JR., for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming,

Hugh Kimbley, a citizen and taxpayer of the city of Owensboro, brought this suit against the city, and the mayor and members of the common council of the city, to enjoin a sewerage bond issue of $225,000.00. Plaintiff's demurrer to the answer was overruled, and plaintiff having declined to plead further, his petition was dismissed. Plaintiff appeals.

The answer discloses the following facts: Owensboro is a city of the third class. On October 7, 1915, the common council passed "An ordinance providing for obtaining the assent of the voters of the city of Owensboro to authorize the common council thereof to borrow money, by issuing bonds of said city, to be used in repairing

and reconstructing the present sewerage system in said city, and for the purpose of constructing and installing additional sewers to its present sewage disposal system, and providing for the amount of money necessary to be raised annually by taxation for an interest and sinking fund for the purpose of paying the semi-annual interest on and liquidating said bonds at their maturity.'' Said ordinance was twice publicly read and passed by the common council at two sessions held on different days, and on each passage received the votes of more than two-thirds of all the councilmen then elected, and the yeas and nays were duly called on each passage and entered on the journal. This ordinance was duly signed and approved by the mayor on October 8, 1915. By this ordinance an election was ordered to be held on the first Tuesday after the first Monday in November, 1915, for the purpose of submitting to the qualified voters of the city the question whether they would assent to the issue of sewerage bonds to the extent of $225,000.00, and the imposition of an annual tax of $18,750.00 to raise a sinking fund to pay the interest on said bonds and liquidate the principal thereof at maturity. The ordinance further provided that the mayor should cause notice of said election to be published in some daily newspaper published in the city of Owensboro for not less than fifteen days prior to the date of said election. At that time the Owensboro Daily Messenger and the Owensboro Inquirer were both daily newspapers published in the city of Owensboro, and the former was published on every day except Monday, and the latter on every day except Saturday. The notice of the election was published in the Owensboro Daily Messenger for seventeen consecutive days, Mondays excepted, next preceding the election. Notice was also published in the Owensboro Inquirer for seventeen consecutive days, Saturdays excepted, next preceding the election. The election was regularly held on the first Tuesday after the first Monday in November, 1915, and 1,373 votes were cast in favor of the bond issue and 310 votes against it, and the result properly certified.

On February 21, 1916, an ordinance authorizing and directing the issue and sale of the bonds of the city of Owensboro to the amount of $225,000.00, and appropriating $18,750.00 annually of the revenue and public moneys of the city for the payment of the semi-annual interest thereon, and creating a sinking fund for the

ultimate payment of the principal thereof, was passed by the common council. This ordinance was also twice publicly read and passed by the common council at two sessions thereof, held on different days, and on each passage the ordinance received the votes of more than two-thirds of all the councilmen then elected, and the yeas and nays were duly called on each passage and entered on the journal. The ordinance was approved by the mayor on February 21, 1916. The ordinance provided for the issue of 450 bonds of the denomination of $500.00 each, which bore interest at 5 per cent., and were payable at the pleasure of the city after five years from date. The bonds were not offered for sale until April, 1917.

Since the common councils of cities of the third class may construct or reconstruct, maintain, alter, repair or change systems of sewers in such manner and at such time as they shall, by ordinance, declare, either by general taxation or at the cost of the property owners—Kentucky Statutes, section 3290—there can be no doubt as to the power of the city of Owensboro to incur the indebtedness for the purpose indicated, and to liquidate this indebtedness by general taxation. Not only so, but express power is conferred to contract debts, borrow money and issue bonds by section 3284 of the Kentucky Statutes, which provides: "Subject to the limitations imposed by the constitution and this act, the council shall have the power to contract debts and to borrow money, and to issue the bonds of the city therefor, and to control the finances and the property of the city."

While it is true that charters of cities of the third class do not in terms confer upon the common councils thereof the power to order an election for the purpose of submitting a bond issue to the qualified voters thereof, yet, in view of the fact that section 157 of the constitution provides that no city shall be authorized or permitted to become indebted to an amount exceeding, in any year, the income and revenue provided for such year, "without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose," and section 3284, *supra*, Kentucky Statutes, provides that the council of a city of the third class shall have power to contract debts, borrow money and issue bonds, "subject to the limitations imposed by the constitution," it has been held that such power is necessarily implied, although the general rule is that elections cannot be held without

affirmative constitutional or statutory authority. O'Bryan v. City of Owensboro, 113 Ky. 680, 68 S. W. 858.

Since the ordinance ordering the election provided that notice of the election should be published in some daily newspaper published in the city of Owensboro for not less than fifteen days prior to the date of said election, and since the notice was published in the Owensboro Daily Messenger for seventeen consecutive days, Mondays excepted, next preceding the election, and in the Owensboro Inquirer for seventeen consecutive days, Saturdays excepted, next preceding the election, it can not be doubted that proper notice of the election was given.

Section 158 of the constitution prohibits cities of the third class having a population of over fifteen thousand from incurring an indebtedness, which, together with its existing indebtedness, exceeds in the aggregate ten per cent. of the value of its taxable property, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness. Owensboro has a population of over fifteen thousand. According to the assessment of January 10, 1916, the assessed value of all of the taxable property in the city of Owensboro was $9,351,186.31. The existing indebtedness of the city is $363,000.00, less $37,770.94 now in the sinking fund, or $325,229.06. Of this indebtedness, however, $41,000.00 was created prior to the adoption of the present constitution, and should not be considered in determining the amount of the city's indebtedness within the meaning of the constitution. Constitution, section 158; Bank v. Taylor Co., 112 Ky. 243, 65 S. W. 451. It results, therefore, that the city's outstanding indebtedness is only $284,229.06. Even if we assume that the entire indebtedness of $225,000.00 will be incurred in the year 1917, the aggregate indebtedness of the city, including its existing indebtedness and the proposed indebtedness represented by the bond issue, will amount to only $509,229.06, whereas section 158 of the constitution authorized an indebtedness of ten per cent. of $9,351,186.31, or $935,118.63. It is clear, therefore, that the proposed indebtedness, together with the existing indebtedness of the city, will not exceed the debt limit authorized by section 158.

In conclusion, it may be said that the answer clearly shows that all steps necessary to the validity of the proposed bond issue were properly taken, and that the chan-

cellor did not err in overruling plaintiff's demurrer thereto and in adjudging that plaintiff was not entitled to the relief sought in his petition.

Judgment affirmed.