## Central Construction Company v. City of Lexington.

(Decided January 22, 1915.)

### Appeal from Fayette Circuit Court.

1. **Municipal Corporations—Ordinances—When Not Measures for Raising Revenue.**—Ordinances originating in the board of aldermen of a city of the second class, one ordering an election to determine whether an indebtedness should be incurred by the city and its bonds to that amount issued, for a necessary municipay improvement, naming the amount of such indebtedness and

the amount to be raised annually by taxation to pay interest on the bonds and creates a sinking fund to retire them at maturity; the other passed after the election, declaring the result, directing the issuance of the bonds and ordering the general council to thereafter levy and collect annually a tax sufficient to pay the interest on the bonds and create a sinking fund for their retirement, are not measures for raising revenue in the meaning of Section 3060, Kentucky Statutes. Consequently, it was not necessary that they first be introduced in and passed by the city's board of councilmen, as required by its provisions.

2. Municipal Corporations—Ordinances for Raising Revenue—What Are.—Ordinances of a city providing merely for the incurring of an indebtedness are not measures for raising revenue, as the indebtedness is to be paid in the future by the levy and collection of taxes to be thereafter fixed and imposed by subsequent ordinances. Bills or ordinances for raising revenue are confined to such as levy taxes in the strict sense of the word and do not embrace bills or ordinances for other purposes, which incidentally create revenue.

3. Municipal Corporations—Publication of Ordinance as Notice for Election—What Publication of Notice Insufficient.—Where a statute providing for the holding of an election to determine whether an indebtedness shall be incurred by a city of the second class, declares that it shall be done by publication, in the official newspaper of the city, of the ordinance calling the election and that "such ordinance shall be published for at least two weeks just preceding the election," its publication for only nine days just preceding the election will be fatal to the validity of the election. The requirement as to notice being mandatory, whether its language "at least two weeks just preceding the election" be construed to mean each of the two weeks, running from Sunday to Saturday, inclusive, next preceding the week in which the election is held, or fourteen days just preceding the election and including the day thereof, under neither computation was there a sufficient publication of the ordinance in this case.

R. J. COLBERT for appellant.

JAMES G. DENNY and J. EMBRY ALLEN for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

In September, 1912, it was determined by the general council of Lexington, a city of the second class, to construct and install a sewage purification and disposal plant, also a storm water system, and complete what was known as the northern main sewer of the city, which had theretofore been partially constructed. As, according to the best estimates obtainable, the cost of the contemplated improvements would amount to $200,000.00, which

could only be raised by the issuance and sale of the city's bonds, following an election determining that the indebtedness should be incurred, on September 12, 1912, there was duly passed by the board of aldermen of the city of Lexington and on October 1, 1912, by its board of councilmen an ordinance styled No. 3019, providing for the holding of such election, and on the following day, October 2, 1912, it received the approval of the mayor. The ordinance, in conformity to Section 3060, Kentucky Statutes, as amended by an act of the Legislature of 1910 (Acts 1910, page 296), provided for the submission to the qualified voters of the city of the question whether the indebtedness of $200,000.00 should be incurred and bonds issued therefor, fixed November 5, 1912, as the day for holding the election, specified the indebtedness proposed to be incurred, the purposes of the same and the amount of money necessary to be raised annually by taxation for an interest and sinking fund.

Pursuant to the provisions of the ordinance, the election was held on the 5th day of November, 1912, at which there were 2,108 votes cast in favor of incurring the indebtedness and issuing the bonds, and 715 votes in opposition thereto. After the election commissioners had duly canvassed and certified the votes as cast, there was passed by the board of aldermen of the city of Lexington, on December 31, 1912, and on the same day passed by the board of councilmen, an ordinance known as No. 3092, which, on January 4, 1913, was approved by the mayor, and immediately thereafter duly published at length in the Lexington Herald. This ordinance, after reciting the result of the election, authorized and directed the mayor to issue and sell the bonds of the city of Lexington to the amount of $200,000.00, maturing forty years after date, bearing 4% per annum interest, payable semi-annually, to provide funds for constructing the sewage purification and disposal plant and other work referred to. Section 4 of the ordinance provided for the levy by the general council of an annual tax on all of the real and personal property subject to taxation within the city, sufficient to pay the interest on the bonds as it became due and to create a sinking fund to pay the principal of the bonds at maturity.

On December 13, 1913, the appellant, Central Construction Company, entered into a written contract with the appellee, city of Lexington, whereby it undertook

and agreed to construct the uncompleted portion of the northern main sewer of the city at the price of $35,-000.00, to be paid in the bonds of the city issued pursuant to the ordinances, *supra*, which bonds appellant agreed to accept at their par value, with accrued interest.   When appellant became entitled to the bonds under the contract referred to they were issued and tendered it by the appellee city, but it refused to accept them in payment for the work performed under its contract, upon the ground that they were invalid and by reason thereof could not be sold in any market.   Following appellant's rejection of the bonds appellee brought this action in equity in the Fayette Circuit Court, praying that the court declare the bonds valid, and that the appellant be compelled to specifically perform its contract by accepting the bonds as therein provided.

The latter filed a general demurrer to the petition and also an answer interposing the defense:   (1) That ordinance No. 3019, ordering an election to be held on November 5, 1912, for the purpose of submitting to the voters of the city of Lexington the question of incurring an indebtedness of $200,000.00 and issuing bonds therefor, is invalid, because it was attempted to be enacted for the purpose of raising revenue, and did not originate in the board of councilmen of the appellee, as required by law.   (2) That the ordinance No. 3019 was not published in the official newspaper of the city of Lexington for at least two weeks just preceding the election held on November 5, 1912, for which reason the election was void and of no effect.   (3) That ordinance No. 3092, authorizing and directing the mayor to issue and sell the bonds of the city to the amount of $200,000.00, is invalid, because it was attempted to be enacted for the purpose of raising revenue and did not originate in the board of councilmen of the city, as required by law.

The appellee filed a general demurrer to the answer, and thereafter the court overruled appellant's demurrer to the petition, but sustained  appellee's demurrer to the answer, and upon the failure of appellee to plead further, rendered judgment declaring the bonds valid and compelling appellant to accept them in payment for the work performed by it under its contract with appellee.   To reverse that judgment this appeal is prosecuted.

The objection urged by appellant to the validity of the two ordinances in question rests upon the false as-

sumption that they are measures or ordinances for raising revenue, within the meaning of Section 3060, Kentuckp Statutes, and therefore should have originated in the board of councilmen, instead of in the board of aldermen, of the appellee city. These ordinances are not ordinances for raising revenue, but are ordinances for creating debt. Neither of them provides for raising revenue for the city of Lexington, but to create a debt of the city which it will have to pay in the future. The first submitted to the voters of the city the question of incurring such indebtedness, and the election favored its being incurred by the city. The second was passed to declare the result of the election and provided for incurring the indebtedness by directing the issuing of the bonds. Neither of the ordinances levies a tax for the purpose of raising revenue. For these reasons neither can be said to be in violation of Section 3060, Kentucky Statutes, which provides:

"All ordinances and resolutions for rasing revenue shall originate in the board of councilmen, but the board of aldermen may propose amendments thereto; *Provided*, no new matter is introduced under color of amendment which does not relate to raising revenue."

The cases of Commonwealth v. Bailey, 81 Ky., 395, and Thierman Co. v. Commonwealth, 123 Ky., 740, relied on by appellant, do not, in our opinion, sustain its contention. In the Bailey case the constitutionality of "An Act to Regulate the Fees and Salaries of Certain Public Officers," approved April 9, 1880, and to compel the appellee as marshal of the Louisville Chancery Court, to make a statement or report of all salaries, fees, emoluments and perquisites received by him for his services as marshal during that part of the year 1880 subsequent to the passage of the act, was called in question. It was admitted that the bill originated in the Senate, and for that reason it was claimed that the act violated Section 30, Article 2, Constitution of 1849, which, like that of Section 47 of the present Constitution, declares:

"All bills for raising revenue shall originate in the House of Representatives, but the Senate may propose amendments thereto; Provided, no new matter shall be introduced under color of amendment, which does not relate to raising revenue."

We, however, held that the act was not one for raising revenue. In the opinion it is said:

"According to Mr. Story, Section 874, Section 7, Article 1, of the Constitution of the United States, which is in the exact language of the first clause of the section above quoted from the present Constitution of the State, means what are usually termed 'money bills' and that, in practice, the constitutional provision is applied to bills to *levy* taxes in the strict sense of the word. * * * It is clear from every source that the terms 'bills for raising revenue' are confined to bills to levy taxes in the strict sense of the word, and do not embrace bills for other purposes which incidentally create revenue, unless so framed as to draw money from the people, with no other advantage or benefit to them except the general protection which belongs to the citizen under our form of government as a matter of common right."

In Thierman Co. v. Commonwealth, the act involved also originated in the Senate, but as it, in addition to providing penalties for the violation of its provisions, also levied a tax of fifty cents on each barrel of spirits compounded, etc., and required its collection by the auditor, it was held to be a bill having for its primary object the raising of revenue, and therefore violated Section 47 of the Constitution of the State.

We do not agree with counsel for appellant that the second ordinance, No. 3092, is "unmistakably an ordinance for raising revenue." It is true that it provides that an annual tax be levied on all the taxable property of the city of Lexington, but it will be observed that it does not fix or indicate the amount of such tax. It merely provides that there shall be levied by the general council of the city of Lexington an annual tax, which levy the general council must make year by year for the purpose of providing for the payment of the interest on the bonds as it shall become due, and to create a sinking fund for the purpose of retiring them at maturity. The levy of the tax, which includes the fixing of the tax rate and authority to collect it, is left wholly to the future action of the general council. When such levies are made they must originate in and be passed by the board of councilmen and thereafter be also passed by the board of aldermen. In other words, the ordinance in question merely makes provision for the future levy and collection of an annual tax for the payment of the bonds and interest as required by the statute, but the statute does not require that this ordinance shall actually levy any

tax or raise any revenue. On the contrary, the statute merely provides, as the ordinance directs, "That it shall be the duty of the general council *in each year there-after*, at the time at which other taxes are levied and collected, to levy and collect a tax sufficient for such purpose." Link v. Karb (Ohio), 104 N. E., 632. Manifestly no tax collector could have claimed or exercised the right to collect a tax under ordinance No. 3092, for it fixes no tax rate. It follows from what has been said that neither of the ordinances in question is, in our opinion, open to the objection made by appellant to its validity.

Appellant's third contention, that the publication of ordinance No. 3019 was not sufficient to give legal notice of the election, presents a more serious question. Section 12 of the act of 1910 provided:

"If, in any year, the general council shall deem it necessary to incur any indebtedness, the payment of which cannot be met without exceeding the income and revenue provided for the city for that particular year, it shall, by ordinance, order an election by the qualified electors of the city to be held, to determine whether such indebtedness shall be incurred. Such ordinance shall specify the amount of indebtedness proposed to be incurred, the purpose or purposes of the same, and the amount of money necessary to be raised annually by taxation for an interest and sinking fund, as herein provided. *Such ordinance shall be published for at least two weeks just preceding the election* in the official newspaper in and for such city, or by posting written or printed copies thereof at three or more public places in such city, if there be no such official newspaper."

It is admitted that the Lexington Herald, a daily publication, was then, and is at this time, the official newspaper of the appellee city, and that the only publication of ordinance No. 3019 was made in and by the Lexington Herald. It first appeared therein October 3, 1912, but this publication, it is alleged in the answer and admitted by the demurrer, was made only for the purpose of complying with the provisions of Section 3045, Kentucky Statutes, requiring all ordinances of cities of the second class to be so published to give them validity. The ordinance was again published in the Lexington Herald on October 27, 28, 29, 30, 31, November 1, 2, 3, 4, 5. It is further admitted that October 27, the day on

which the ordinance was the second time published, but first legally published as a notice to the voters of the time, place and purpose of the election, was Sunday; and that November 5, the day it was last published, was the day during which the election was held. In Ormsby v. City of Louisville, 79 Ky., 197, we held that where publication of a levy ordinance of the city of Louisville was made on Sunday, and no other day, before seeking to enforce it, the publication was not such as the city charter required or the law of the State approves. That Sunday is not a judicial day, nor is it a day upon which any work, labor or calling can be legally pursued, unless of necessity or charity; and, furthermore, that such publication was of itself a violation of law, and no citizen, by any law of this State, was bound to read or take notice of it. So, if October 27 is not to be counted, there were nine days of publication, including the day of the election, remaining. If the 5th should not be counted, there would be but eight days left. Upon the other hand, if October 3, the day on which the ordinance was published for the purpose of giving it force as such, could properly be included, together with Sunday, the 27th of October, there would still be but eleven days' publication of the ordinance before the election.

In Newton, etc., v. Ogden, etc., 126 Ky., 101, the question presented for decision was whether a local option election held on the 6th day of December, 1906, violated Section 2555, Kentucky Statutes, which provides that such election "shall not be held on the same day with any political election, nor within thirty days next preceding or following any such regular political election." It appears that the regular political election was held on the 6th day of November and the local option election on the 6th day of December, 1906, the election being contested upon the ground that it was held within thirty days next following the regular election. If the day on which the regular election was held was to be included in the computation of time, the local option election was not held within thirty days. If the date of the regular election is excluded it was within the prohibited time. It was held that the day of the regular election was properly included as a part of the thirty days' time, for the reason that the holding of the regular election was an act done; therefore, as said in the opinion:

"The manner of computing time, when it becomes a question as to whether it shall be computed from an act done or the day upon which it was done, is altogether a matter of construction. In the absence of a statute controlling it, different rules have been adopted by courts of last resort; but in this State it has been settled by numerous adjudications that, when the computation has to be made from an act done, then the day on which it is done must be included; but, if it is to be made after or from the day it is done, the day must be excluded."

It appears from the opinion that the right to include in the thirty days' time the day upon which the local option election was held was not questioned by court, or counsel.

It is manifest in the instant case that there was not a sufficient publication of the ordinance providing for the holding of the election. Whether the provision of the act, *supra,* requiring it to be published for "at least two weeks just preceding the election," be construed to mean each of the two weeks, running from Sunday to Saturday, inclusive, next preceding the week in which the election was held; or fourteen days just preceding the election and including the day thereof, under neither computation can it be made to appear that there was a publication of the ordinance for at least two weeks just preceding the election. The act does not require a daily publication of the ordinance for two weeks just preceding the election; therefore, it would seem that its publication once in each of the two weeks in a weekly newspaper would be sufficient, if made once in each of the two weeks just preceding the election, but, according to the admitted facts, even this was not done by appellee.

In City of Chanute v. Davis, 85 Kan., 188, the auditor of the city was mandamused to register certain bonds issued by the city for waterworks purposes, his refusal to make the registration being based upon the fact that the statutory notice of the election authorizing the bonds was not given. The statute required that notice for the election should be published in at least one newspaper for three consecutive weeks, the first publication to be at least twenty days prior to the day fixed for such election. The election was called for Saturday, September 17, 1910. The notice was dated August 17, 1910, and was published in a daily newspaper for ten consecutive days, Sunday excepted, beginning

on Wednesday, August 17th, and ending on Saturday, August 27th. The notice was not published for three weeks, nor in three separate weeks, but the city showed that the subject of issuing waterworks bonds was one of great interest from the time the ordinance was passed until the election occurred, and was much discussed by voters and taxpayers. It was considered at a public meeting of the Commercial Club of the city and at a mass meeting of the citizens, and columns of the local newspapers were devoted to the subject from August 17th to September 17th. In view of these facts, it was insisted that the failure to give the statutory notice should be treated as an irregularity only and not as a jurisdictional defect. The court, however, in refusing to so treat it, said:

"The question here, however, is whether the court shall recognize a kind of publicity which has no legislative basis whatever upon which to rest in order to support a special election resulting in bonding the city, and thereby adding to the burdens of every taxpayer within its limits. The Legislature could not have been unmindful of the fact that proposed measures of this character would be discussed in private, in public, and by the press. Undoubtedly it took for granted the certainty of such publicity. Nevertheless, it provided for a specific notice, making a collective statement of all the information necessary for the guidance of a voter, to be published for a definite period of time. The court is not prepared to substitute its judgment for that of the Legislature and accept anticipated notoriety as the equivalent of official notice. * * * If, therefore, general participation in an election of this kind may render the matter of legal notice inconsequential, as courts other than this one have sometimes held, the principle cannot be invoked here. The failure to give the statutory notice may have, in effect, deprived a sufficient number of qualified voters of their votes to change the result of the election. So far this court has uniformly held that statutory notice is essential to the validity of a special election. George v. Oxford Township, 16 Kan., 72; The State, ex rel. v. Echols, 41 Kan., 1; The State v. Bentley, 80 Kan., 227; Rice v. Robson, 83 Kan., 252."

In State v. Mayor, etc. (N. Jersey Sup. Ct.), 38 Atl., 750, the court had under consideration an act providing for the calling of special elections to determine whether

there should be an issue of bonds in certain cases by municipalities. The statute required twenty days' notice of such election by publication after the adoption of the resolution calling the election had been signed by the mayor. The election being held May 18, 1897, and the notice thereof given April 27, 1897, and before the mayor approved the resolution on April 30, 1897. In holding the notice insufficient the court said:

"As above stated, the mayor's approval was on April 30, 1897, and therefore the notice of the special election published before that day was abortive; and, as there was less than 20 days' time between such approval and the date of the election, no legal notice thereof could be given. The requirement of notice of a special election is mandatory. Morgan v. Gloucester City, 44 N. J. Law, 137. The election, therefore, of May 18, 1897, was nugatory."

The cases in other jurisdictions relied on by appellee's counsel as sustaining the sufficiency of the notice given of the election here involved, are based upon statutes unlike that of this State, or attempted to be supported by reasoning we think it unwise to adopt. The provision of the act, *supra*, as to the publication of notice of the election is clearly mandatory; therefore, it will not do to say that anything short of a substantial compliance therewith will suffice; and, obviously, such a failure to obey its requirements as is here shown, must be regarded as fatal to the validity of the bonds issued by the appellee city pursuant to the election.

For the reasons indicated, the judgment is reversed and cause remanded with directions to the circuit court to overrule the demurrer to appellant's answer and sustain the demurrer to appellee's petition, and for further proceedings consistent with the opinion.