## Hatfield v. City of Covington.

(Decided October 12, 1917.)

Appeal from Kenton Circuit Court.

1. Municipal Corporations—Ordinances—Enactment—Newspapers.— Section 3069 of the Kentucky Statutes, which requires that ordinances of cities of the second class calling an election to vote upon a proposition to incur a city indebtedness, shall be published for at least two weeks just preceding the election in the official newspaper in and for such city, is mandatory and must be substantially complied with.

2. Municipal Corporations—Ordinances—Enactment—Newspapers.— Section 3069 of the Kentucky Statutes, which requires that an ordinance of the general council of a city of the second class calling an election to vote upon a proposition to incur indebtedness on behalf of the city, shall be published for at least two weeks just preceding the election in the official newspaper in and for such city, calls for a continuous publication of the notice in every issue of the official newspaper published during the prescribed period, except those published on Sundays.

3. Municipal Corporations — Ordinances — Enactment—Notice—Election—Newspapers.—The failure to publish an ordinance calling an election, in the daily official newspaper of a city of the second class on Friday and Saturday preceding the Tuesday on which the election was held, vitiated the notice and the election held under section 3069 of the Kentucky Statutes, which provides that the ordinance shall be published for at least two weeks just preceding the election in the official newspaper in and for said city.

WM. J. DEUPREE and M. H. McCLEAN for appellant.

A. E. STRICKLETT and F. M. SCHMITZ for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

This is an appeal from a judgment of the Kenton circuit court sustaining the validity of a proposed bond issue for $140,000.00, by the City of Covington, a city of the second class, for the purpose of obtaining suffi-

cient funds to pay its floating indebtedness, pursuant to a vote of the people at an election held November 7, 1916. At the same election nine other bond issues of the city of Covington, for an aggregate sum of about $360,-000.00, and for the purpose of enabling the city of Covington to extend and complete its system of public ways, streets, and thoroughfares, were likewise approved by the people. This appeal, however, only directly affects the bond issue for $140,000.00 above referred to.

Several questions have been presented by the briefs; but in view of the conclusion we have reached concerning the validity of the publication of the ordinance calling the election, it is not necessary that we should consider any other question.

Section 3069 of the Kentucky Statutes is a part of the charter of cities of the second class, and reads as follows: "If, in any year, the general council shall deem it necessary to incur any indebtedness, the payment of which cannot be met without exceeding the income and revenue provided for the city for that particular year, it shall, by ordinance, order an election by the qualified electors of the city to be held, to determine whether such indebtedness shall be incurred. Such ordinance shall specify the amount of indebtedness proposed to be incurred, the purpose or purposes of the same, and the amount of money necessary to be raised annually by taxation for an interest and sinking fund, as herein provided. Such ordinance shall be published for at least two weeks just preceding the election in the official newspaper in and for such city, or by posting written or printed copies thereof at three or more public places in such city, if there be no such official newspaper."

The ordinance calling the election was enacted by the board of commissioners of the city of Covington on September 21, 1916, and was published in the Kentucky Post, the official newspaper for the city of Covington, on September 25th, October 23rd, 24th, 25th, 26th, 27th, 28th, 30th, 31st, and November 1st, and 2nd, 1916. The Kentucky Post is published daily in the city of Covington.

Eliminating the first publication of September 25th, 1916, as immaterial in the consideration of this question because that day is not embraced within the two weeks named in the statute, it will be observed that the first publication was on Monday, October 23rd, and that the ordinance was published throughout that week ending

with Saturday, October 28th. It was likewise published on Monday, Tuesday, Wednesday, and Thursday November 2nd, of the ensuing week, but was not published on Friday November 3rd, or Saturday November 4th, of that week, or at any subsequent time. The election was held on the following Tuesday, November 7th.

So, if we are to treat the qualifying phrase "two weeks just preceding the election," either as meaning fourteen days just preceding November 7th, or the two weeks of seven days each which preceded the week in which the election was held, it is apparent that the ordinance was not published every week-day, "for at least two weeks just preceding the election," since it was not published either on Friday, or Saturday, or on the Monday just preceding the election.

Did this publication satisfy the statute? The only case cited by counsel upon either side is Central Construction Company v. City of Lexington, 162 Ky. 286, 294. In that case section 3069, *supra,* was considered under a publication somewhat similar, in principle, to the case at bar. In the Lexington case the ordinance had been published on October 27th, 28th, 29th, 30th, 31st, and November 1st, 2nd, 3rd, 4th, and 5th. October 27th, the first day of the publication, was Sunday, and November 5th, the last day of the publication, was the day on which the election was held.

In holding the publication insufficient to satisfy the statute the court said:

"It is manifest in the instant case that there was not a sufficient publication of the ordinance providing for the holding of the election. Whether the provision of the act, *supra,* requiring it to be published for 'at least two weeks just preceding the election,' be construed to mean each of the two weeks, running from Sunday to Saturday, inclusive, next preceding the week in which the election was held; or fourteen days just preceding the election and including the day thereof, under neither computation can it be made to appear that there was a publication of the ordinance for at least two weeks just preceding the election. The act does not require a daily publication of the ordinance for two weeks just preceding the election; therefore, it would seem that its publication once in each of the two weeks in a weekly newspaper would be sufficient, if made once in each of the two weeks just preceding the election, but, according

to the admitted facts, even this was not done by appellee.''

In holding this requirement of the statute to be mandatory the court, in the Lexington case, *supra*, further said:

''The cases in other jurisdictions relied on by appellee's counsel as sustaining the sufficiency of the notice given of the election here involved, are based upon statutes unlike that of this state, or attempted to be supported by reasoning we think it unwise to adopt. The provision of the act, *supra*, as to the publication of notice of the election is clearly mandatory; therefore, it will not do to say that anything short of a substantial compliance therewith will suffice; and, obviously, such a failure to obey its requirements as is here shown, must be regarded as fatal to the validity of the bonds issued by the appellee city pursuant to the election.''

The decisions upon this question are widely varient. Notices by publication are required in respect to a multitude of subjects; and, if the subject is such as to call for a liberal interpretation of the requirement as to notice, a conclusion against a continuous publication may be reached; whereas a strict construction of the requirements may lead to the opposite conclusion. Furthermore, where the requirement arises from a statute, other laws of the state relating to the manner of giving notice and the interpretation placed thereon may disclose the intention of the legislature on the particular question. Montford v. Allen, 111 Ga. 19. To illustrate: Where other statutes requiring the publication of notices in newspapers uniformly prescribed the number of insertions, or in direct language indicated the prescribed number of issues of the paper which should contain the notices, the inference could be fairly drawn that, in the absence of language indicating the number of publications of a notice, one made at the time prescribed would be a compliance with the requirement of the statute. Koehler v. Hill, 60 Iowa 581.

And, the character of the newspaper in the particular locality is an element to be considered. If no daily newspaper is published in the town or city giving the notice, it is obvious that the requirement must not be held to contemplate the continuous daily printing of the notice. Neither will a requirement of a certain number of ''days' notice'' be deemed to mean that number of insertions in a weekly paper. Thus in Woodward v. Col-

lett, 20 Ky. L. R. 1066, 48 S. W. 165, where the statute required a mayor to advertise for proposals to build a sidewalk "for at least ten days before the letting," it was contended that the advertisement should have been published for ten days in a daily newspaper before the letting. The court, however, overruled that contention, saying:

"We are of the opinion that the publication of the notice for bids, by its insertion in the paper for one time ten days before the day of the letting, as is alleged in the answer, was a compliance with the statute. If appellant's contention that it took ten insertions in a paper (be correct), and there should happen to be no daily paper in the city, it would take ten weeks after the ordinance before the contract could be let. This evidently was not the legislative intent. There is no reference as to what paper, whether daily or weekly, in which the notice should appear. We think the demurrer to this paragraph was properly sustained."

It does not appear, however, from the opinion in Woodward v. Collett, *supra,* whether an official newspaper had been designated as the official organ of the city. On the contrary, it may be reasonably assumed, from the language of the ordinance therein quoted, that the notice might properly have been published in any newspaper published in the city of Bowling Green. It was published once only, in a daily newspaper, more than ten days before the letting.

Likewise, in Billington v. Moore, 168 Ky. 22, where the statute required that the notice of an election to be held upon a proposition to issue county road bonds, should be advertised "for at least thirty days next before" the day of the election, it was held that notices published in five consecutive issues of each of the two weekly papers published in the county next before the day of the election satisfied the statute. But in that case it affirmatively appeared that there was no daily paper published in the county, and that the notice was published continuously and as often as was possible under the circumstances. The case does not affect the authority of Woodward v. Collett, *supra,* and cases of that class, or aid very materially a decision of the question before us, on account of the marked difference between the two statutes.

In the absence of more precise language in the statute, the requirement of ten, twenty, or thirty, or any

other number of "days' notice," has been held quite uniformly, not to contemplate a daily printing of the advertisement or notice, but that the requirement will be satisfied by a single insertion made the requisite number of days, in advance. Brunswick v. Finney, 54 Ga. 317; McGilvery v. Lewiston, 13 Idaho 354; Aldis v. South Park Commissioners, 171 Ill. 432; Andrews v. Railroad Company, 14 Ind. 172; Central Savings Bank v. Baltimore, 71 Md. 518; Southwork v. Glasgow, 232 Mo. 108, Ann. Cas. 1912 B. 1267, with note; Muskingum Valley Turnpike Company v. Ward, 13 Ohio 120; 42 Am. Dec. 191; Newport News v. Potter, 122 Fed. 321, 58 C. C. A. 483; Atkinson v. Washington & Jefferson College, 54 W. Va. 45. In cases of this class, where the statute requires no more than a given number of days' notice, there is merely the requirement that the notice must be given for a given number of days, without any further specifications that could reasonably require more than a single insertion.

It will be noticed, however, that section 3069 of the Kentucky Statutes now under consideration requires the notice to be published "for" at least two weeks; that those two weeks must just precede the election; and that the notices must be published in the official newspaper of the city. These specifications clearly take cases arising under section 3069 out of the general rule above referred to, which holds that, ordinarily, a single insertion of the notice will satisfy a statute which simply requires the notice to be published a given number of days.

According to the prevailing view the preposition "for" as used in section 3069, *supra,* when given its full meaning, determines the interpretation of the requirement, and the notice must be published continuously in all the issues of the newspapers. Brown v. Ogg, 85 Ind. 238; Watkins v. Williams, 33 Kan. 150; Lawson v. Gibson, 18 Neb. 137.

In Whitaker v. Beach, 12 Kan. 492, the court in construing a statute which required public notices to be given *"for* at least thirty days before the day of sale" by advertisement, spoke to the effect to be given the word "for" in the following language:

"It seems to us to be nearly equivalent to the word 'during.' Such is a common signification of the word, and unless it have that meaning here it is entirely superfluous. If the legislature had intended that a single insertion in the paper should be sufficient, they would have

expressed this intention much more clearly by omitting 'for' and saying only 'at least thirty days.' The courts, however, in a few instances, have attached no force to the preposition 'for' in this connection, but have adhered to the rule generally held to apply in the absence of that term. Taylor v. Palmer, 31 Cal. 244; Vizard v. Moody, 119 Ga. 918; Kiehler v. Hill, 60 Iowa 580, and Woodward v. Collett, *supra,* may be said to belong to this class.''

But, in the case at bar, the statute goes further and requires much more than is usually required in the way of publication. It requires that the notice shall be published (1) ''for at least two weeks''; (2) that this period of publication must be the two weeks just preceding the election; and (3) it must be in the official newspaper selected by the city. As heretofore shown, these provisions are mandatory and must be substantially complied with; they cannot be ignored.

In those cases holding that more than one publication is necessary, it has generally been held that a requirement of this character means that the notices shall be published continuously during the period mentioned, and not that the notices shall appear on each of a number of days equalling the number specified.

Accordingly, the notices appearing in every issue of a daily newspaper during this prescribed period is sufficient. Etie v. Cade, 4 La. 383. If no paper is published upon some of the days, as is customary in certain localities with respect to Mondays and holidays, the notice is not invalidated thereby. Moore v. Walla Walla, 60 Fed. 961; California Improvement Company v. Reynolds, 123 Cal. 88; Rector v. Harper, 95 Mich. 221; Carpenter v. St. Paul, 23 Minn. 233; Roth v. Forsee, 107 Mo. App. 471; Galveston v. Heard, 54 Texas, 420; Bowles v. Broaer, 89 Va. 466. And, as Sunday is not a juridical day, a publication on that day will neither aid nor detract from the validity of the publication. Ormsby v. City of Louisville, 79 Ky. 197.

Our conclusion is, that the statute calls for a continuous publication of the notice in every issue of the official newspaper published during the prescribed period, except those published on Sundays.

In view of the purpose of the publication we think this rule is a reasonable application of the statute to every day affairs. The citizen knows, or is presumed to know, the official newspaper of his residence; and, to that

he has the right to look for information concerning public affairs. And, when the statute requires an official notice to be published for at least two weeks just preceding an election in the official newspaper, he naturally expects to see it in every issue of the paper during the prescribed period. If the official paper is a weekly paper, he knows the notice can appear only once a week; and if it be a daily paper he has the right to assume, under the strict requirement of our statute, that the notice will likewise appear in every issue. Otherwise, the issue of Monday, only, might contain the notice and to that limited extent, it only, would be the official paper, and the other five issues would give him no information.

As the publication of the notice in this case did not satisfy the statute, the election was invalid.

Judgment reversed, and action remanded with instructions to the circuit court to dismiss the petition.