## City of Tompkinsville v. Miller.

(Decided June 6, 1922.)

### Appeal from Monroe Circuit Court.

1. Municipal Corporations—Street Construction—Costs—Abutting Owners.—In a city of the fifth class, the council can not construct or reconstruct a street, proper, at the entire or partial expense of the abutting property owners, except by contract made through advertisement with the lowest and best bidder.

2. Municipal Corporations—Street Construction—Costs—Abutting Owners.—In the construction of a street, proper, in a city of the fifth class, the council may pay the costs out of the treasury of the city, or require the abutting property to bear the entire expense, or the city may bear one-third of the expense, and the abutting property owners the other two-thirds, but, if one portion of a street is constructed upon one plan, the remaining portion

must be constructed upon the same plan, so as to impose the public burdens with uniformity and equality.

W S. SMITH and G. M. MILLER for appellant.

JACKSON & DENHAM and RICHARDSON & LAWRENCE for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT.—Affirming.

Tompkinsville is a city of the fifth class, and its council adopted an ordinance providing for the construction of a portion of Third street in that city. The portion of the street proposed to be constructed was that part of it from its intersection with Main street to the west side of its intersection with Jackson street, a distance of approximately 800 feet. The ordinance authorized the mayor to appoint a committee consisting of three members of the council, who were mentioned by name, and this committee was directed to prepare plans and specifications for the work of construction, and to advertise the letting of a contract to perform the work to the lowest and best bidder, and was further authorized to reject any bid which seemed to it to be unreasonable. The ordinance further provided that the city should pay for the construction of any street crossings and one-third of the cost of constructing the designated portion of the street, while the abutting property owners were ordained to pay the remaining two-thirds of the cost which was to be apportioned among them by the council in accordance with the number of front feet owned by them, respectively, and the portion apportioned to the lands owned by any one of the abutting property owners should constitute a lien upon the property to secure its payment. The committee prepared plans and specifications for the improvement, and advertised that bids would be received for a contract to execute the work of improvement. No bids, however, were received, and thereafter the council adopted a resolution to the effect that the city would undertake the work and make the improvement, and to that end would employ the necessary teams, tools and labor, and would procure the materials necessary to accomplish the improvement as provided by the ordinance, which authorized the improvement to be made. The resolution contained authority for a designated person to hire teams and workmen and have the street graded and made ready

for putting on the metal. The petition avers that the individual designated in the resolution and authorized to prepare the street for putting on the metal, constructed the portion of the street according to the plans and specifications prepared by the committee, and covering 863 linear feet of same at a cost to the city of $1,057.60, of which sum $90.75 was apportioned to the real estate of appellee, which abuts upon the street where the construction was done, and that said sum is a lien upon appellee's property. The appellee refused to pay the sum apportioned to be paid by him, and this action was instituted by the city to enforce a lien upon appellee's property and sell same in satisfaction of the sum apportioned and the cost. The appellee demurred generally to the petition, but the demurrer was overruled, and he saved an exception to the ruling. The appellee then answered and to the fourth paragraph of the answer the city demurred, but the demurrer was overruled. The city replied, and to the reply a demurrer was sustained, and it declining to further plead, its petition was dismissed, and it has appealed.

The issues appearing upon the record for decision are (1) whether the city has a lien upon the property of appellee to secure the payment of the portion of the costs of the improvement, which was apportioned to it, and (2) if the proceedings were sufficiently regular, as set out in the petition and the exhibits filed with it, to entitle the city to the lien which it seeks to enforce, was it estopped to assert it by the matters pleaded in the fourth paragraph of the answer?

If the facts, as averred in the petition upon which the alleged lien of the city is based, are not under the statute sufficient to create a lien upon the property of appellee, the action of the city failed and the demurrer to the petition should have been sustained, and the sufficiency of the petition to sustain the action will be first considered. That the necessity of a public improvement, which a council is authorized to make, its chartacter and extent, are matters, within the discretion of the council, may be conceded and the courts will not interfere with such discretion, unless, it is abused. Trustees, etc. v. McNabb, 23 K. L. R. 811; Dumesnil v. Louisville, etc., 22 K. L. R. 503; Teager v. Flemingsburg, 22 K. L. R. 1442. Whether the proceedings of the council in the instant case, were invalid, because by the ordinance, which it adopted to authorize the improvement, it delegated to a committee to determine certain matters, relating to the materials to be

used and the extent of the work, which were matters of legislation, requiring the exercise of the discretion of the council, and could not be delegated and the improvement was accomplished according to plans and specifications adopted by the committee and never approved by the council, it will be unnecessary to decide, since the proceedings were fatally defective to create a lien, upon the abutting property. It has long been well established, that the power to require abutting property owners in a city to pay the costs of an improvement, and to create a lien upon the property to secure and satisfy the costs of the improvement, is derived purely from statutory authority, and where no statute exists, which authorizes the council to impose the costs of such an improvement upon the abutting property, it is without power to do so; nor can it create a lien for such purpose unless authorized by statute, and if so authorized, the proceeding to effect it must be in substantial compliance with the terms of the statute upon the subject. City of Owensboro v. Hope, 33 K. L. R. 426; Lexington v. Walby, 33 K. L. R. 116; Olive Hill v. Tabor, 143 Ky. 336; Worthington v. Covington, 82 Ky. 265; Barker v. Southern Const. Co., 20 K. L. R. 796; McGrath v. Trustees, etc., 13 K. L. R. 588. Section 3643-1, Kentucky Statutes (1922), empowers the council of a city of the fifth class to construct or reconstruct a street and pay for same out of a general fund of the city, or it may require the abutting property owners to pay the entire costs, or it may provide for the payment of one-third of the costs by the city and the remaining two-thirds by the abutting property, but section 3643-2, Kentucky Statutes, provides, that whenever a city council shall determine upon the construction and reconstruction of a street, at the expense, in whole or in part, of the abutting property, as provided by section 3643-1, *supra,* it shall have to be done as follows: "The ordering of such improvement shall be by ordinance of the city council, and the contract therefor shall be awarded to the lowest and best bidder after proper advertisement for bids. . . . " It will thus be observed that the statute does not authorize the council to cause the construction of a street at the costs of the abutting property, in any other way, except by letting it to contract to the lowest and best bidder, and specifically requiring it to be done, in that way precludes any other way. Hence, a city may, if the council so ordains, construct a street and pay the costs out of its general fund, but, if it does not

let the work to contract to the lowest and best bidder, it can not impose the costs upon the abutting property, and will, of course, have no lien thereon, if the council accomplishes the work, by some other method, than that designated. In the instant case, the making of the improvement was not by contract, with the lowest and best bidder, after advertisement, and such fact appears from the petition. The fact, that the work was advertised and offered to contract to the lowest and best bidder and no bids were received does not entitle the city to have the work done through a committee or agent and then impose the costs of it upon the abutting property, but, in such instance, it must abandon the project or else have the improvement made and pay for it out of the general fund. It is insisted, that under the provisions of section 3647, Kentucky Statutes, the portion of the costs of the improvement apportioned to the property of appellee was less than $100.00, and hence it was not necessary to create a lien upon his property that the making of the improvement should have been accomplished by contract, and a letting to the lowest and best bidder. Section 3647, *supra,* was, however, a statute, which became a law during the legislative session of 1891-2-3, and was section 31 of chapter 250, of the acts of that session. Section 3643-2, *supra,* was enacted in 1912, and its provisions, so far as relate to the construction of streets superseded section 3647, *supra,* and besides, if the latter act was still in effect, regarding the construction of streets, "the expenditure required for the improvement was $1,057.65, and the provision of the statute could not be evaded, by splitting it up and apportioning it among different individuals. Olive Hill v. Tabor, *supra,* does not hold contrary to this view, since the entire cost of the improvement in that case, was less than $100.00. The demurrer to the petition should, therefore, have been sustained.

The appellee, by the fourth paragraph of his answer, averred that in the year, 1916, the city council caused Third street to be constructed from the corporate limits of the city to its intersection with Jackson street, a distance of one-half mile, and to the point, where the construction of 1920, for a part of the costs of which this action was instituted, begins, and paid for the construction out of the general fund of the city, and that appellee's property bore its proportional share of the taxation necessary to create the funds to satisfy the costs, and that the city was now estopped to construct the remainder of

the street, at the costs of the abutting property. The demurrer to this paragraph having been overruled, the city replied, in substance, that the portion of the street constructed by it, in 1916, had not theretofore been dedicated for public use as a street, nor accepted by the city as such, and that the portion of the street was constructed by the city without reference to either of the ways, provided by the statute for the cities of the fifth class to construct streets. The appellee's demurrer to the reply was sustained. It appears, however, that the council substantially adopted the plan of constructing Third street by the method of satisfying the costs out of the public treasury of the town, and that, if the work was not done by contract, as required by section 3643-2, *supra*, could not affect the rights of appellee and other abutting property owners upon the street. When the city improved that portion of Third street, it simultaneously accepted and took control over it as a street of the city, for the use of the public, and with the consent of the owner of the ground, which amounted to a substantial dedication. It appears, at first blush, that it would be manifestly inequitable and unjust to appellee and other property holders upon the unimproved portion of the street, to require them as taxpayers to contribute to the payment for the construction of a half mile of the street, and then to require them to construct the street in front of their property for the use of the public, including those living upon the portion of the street which the city had improved, exclusively at their own costs. In Wickliffe v. Greenville, 170 Ky. 528, it was said, touching a similar situation and touching the methods, by which a city of the fifth class could cause the construction of streets: ''Furthermore, while the city may adopt either of three plans provided by statute, it must follow the same plan in all cases. It was never intended that the city should or could pay the entire costs of constructing a street in front of A's property and require B to pay the entire costs of making the street in front of his property. Uniformity and equality of burdens require that the same system of apportionment, whichever, it may be, should govern in all cases.''

There would be no difference in principle, between where a citizen is required to pay the entire costs of constructing the street in front of his property, and where he is required to pay two-thirds of it, and upon the same

street, the city should pay the entire costs of constructing the street in front of others' property.

The demurrer to the fourth paragraph of the answer, was properly overruled and the one to the reply properly sustained, and the judgment is affirmed.