## Jenkins et ux. v. City of Bowling Green.

### (Decided Oct. 31, 1933.)

120

[redacted]

STOUT & HERDMAN for appellants.
GEORGE W. MEUTH for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The case involves the validity of a street improvement lien on the property of the appellants, Allen Jenkins and wife, in Bowling Green, which has been ordered enforced. The issue springs from opposing interpretations of the statute under which the contract was let and the work done. Section 3454, Statutes, empowers the council or board of commissioners of a city of the third class to improve its streets in its discretion; and further declares:

"It shall have power to let contracts for the work; provided, that no such contracts shall be let except upon competitive bidding to the lowest and best bidder, after advertisement for two consecutive weeks in a newspaper of general circulation published in said city."

The decision hinges upon the meaning and effect of the term "after advertisement for two consecutive weeks." The ordinance followed the statute. Did the Legislature mean that an advertisement for bids must be made only once a week in two weeks, one following the other, without regard to the length of time before the letting of the contract? Did it mean that once a week was enough if the first notice was as long as fourteen days beforehand? Did it mean that the advertisement should continue daily and uninterruptedly for two successive weeks? The problem is not free from difficulty.

Looking at it from the standpoint of duration of time: Sometimes the context of such an expression has resulted in a judicial declaration that the week intended was a calendar week from Sunday to Saturday, but clearly that cannot be so here. Rather must it be regarded as it is commonly spoken of in relation to a particular day or event as being any period of seven consecutive days. If the provision were for advertising *in* two consecutive weeks, there might be room, under a literal construction, for saying it meant that there should be only two publications in two separate units of time composed of seven days each. Even where the phrase is "once a week *for* four consecutive weeks" and the like, some courts hold that notice is not required for the full number of days, and that publication four times in four different weeks, regardless of the extent of the period covered, is sufficient. 62 C. J. 974. Such a construction where the time is two weeks, as here, might permit publication on Saturday and on Monday before the letting of a contract on Tuesday. It has been more frequently held that, though there shall have been a publication once a week for four weeks, one following the other, for example, it was not sufficient unless twenty-eight days had intervened since the first publication. 29 C. J. 197. There are many other foreign authorities to the same effect, but we need not cite them, for this court has definitely declared that such statutory provisions prescribe the minimum period which must be observed as a mandatory requirement. Pendley v. Butler County Fiscal Court, 229 Ky. 45, 16 S. W. (2d) 500; Douthitt v. Board of Trustees of Newcastle, 239 Ky. 751, 40 S. W. (2d) 335. Such an interpretation of the statute directly involved in this case, it seems to us, is the logical one and the legislative intent. It does not say "once a week," but says there shall be an advertisement "for two consecutive weeks." Regard must be had for the purposes of the publication; namely, that the utmost competition may be secured by extended publicity, and a sufficient time allowed for the making of estimates and bids. Not only the two cases cited but others to be considered in a moment sustain this conclusion that, as respects the duration of the advertisement, there should be no less than two weeks or fourteen days intervening between the first publication and the letting of the contract for the work.

Further difficulty is encountered in the question as to whether this should be daily throughout the period, for there are doubtless some cities of this class (and of the fourth class where the provision is the same) where there is no daily newspaper. While the particular phrase does not appear to have been interpreted by this court, we have a line of cases construing section 3069 authorizing the submission of a bond issue and providing for the publication of the ordinance calling the election "for at least two weeks just preceding the election in the official newspaper." In Central Construction Company v. City of Lexington, 162 Ky. 286, 172 S. W. 648, it is said in the course of the opinion that the statute does not require a daily publication, and that it would seem sufficient to publish the notice once in each of the two weeks just preceding the election. The decision, however, did not call for the statement, for, as therein stated, even that was not done, and the conclusion of insufficiency of the notice was rested upon the ground that, although there was in fact a daily publication for eight or perhaps nine days, it did not commence two weeks or fourteen days before the election. The idea expressed in the dictum was early abandoned. In Hatfield v. City of Covington, 177 Ky. 124, 197 S. W. 535, Judge Miller, for the court, gave an exhaustive treatment of the phrase "for at least two weeks just preceding." Regarding the word "for" as having special significance and as meaning "throughout" or "during the continuance of," it was held that the provision called for a continuous publication of the notice in every issue of the official paper, except Sunday, during the prescribed period of fourteen days immediately before the election. This construction has since been consistently adhered to, not only for that particular term, but for similar provisions in other statutes. King v. Katterjohn, 193 Ky. 359, 236 S. W. 250; Bryant v. Lang, 197 Ky. 480, 247 S. W. 756; City of Paducah v. Paducah Newspapers, 249 Ky. 401, 60 S. W. (2d) 981. The construction of the statute must therefore be that there should be at least fourteen days of daily advertising. But, as is disclosed in several of the opinions cited, although Sundays are to be counted in the period, it is not necessary or, indeed, proper that the publication should be made on those days. The same is true as to other days upon which there is no newspaper published in the city. So that, if there be only a weekly

newspaper, the statute is satisfied by having the notice published consecutively in every issue, provided, however, that the first insertion is two weeks or more next preceding the letting of the contract. See, also, Billington v. Moore, 168 Ky. 22, 181 S. W. 651; Kimbley v. City of Owensboro, 176 Ky. 532, 195 S. W. 1087; Marcum v. Melton, 231 Ky. 244, 21 S. W. (2d) 291; City of Corbin, Ky., v. Joseph Greenspon's Sons Iron & Steel Company (C. C. A.) 52 F. (2d) 939.

The City of Bowling Green seems to have recognized in the first instance the necessity of advertising for bids daily for two weeks before the time designated for their reception. The first insertion in the newspaper was on September 18th (Wednesday), and it was continued daily (two Sundays excepted) until and including September 30th (Monday). When the time for receiving bids came, October 1st, it was *after* only thirteen days advertisement. The contract however, was not let until October 3d, or fifteen days after the first insertion of the notice.

The effect of the nonobservance of the statute and the application of the rule to the facts of the case are now to be considered. The publication of the advertisement for bids for public works in the manner and the time prescribed by law is regarded as a condition precedent to final valid action. It is jurisdictional in its nature, and a material noncompliance will invalidate the contract and subsequent proceedings thereunder. This is because it is the source of the power of the municipal authorities to make the contract. McQuillan, Municipal Corporations, sec. 709. If the contract was unauthorized, the assessments against the property for the cost of the work are perforce unauthorized. Robertson v. Southern Bitulithic Company, 190 Ky. 314, 227 S. W. 453; City of Tompkinsville v. Miller, 195 Ky. 143, 241 S. W. 809; City of Ashland v. Stewart, 214 Ky. 234, 282 S. W. 1092.

In measuring the degree of observance of the statute, it is said in McQuillan, sec. 1315:

> "Provisions relative to the duration of time or number of times that advertisements for bids are to be published must be substantially observed."

The several domestic cases we have cited above declare the time specified to be mandatory and that a substantial compliance with the terms of the statute is re-

quired. It is true all of them refer to the matter of advertising special elections. But the same rule both as to the mandatory character of the law and its observance is applicable to the letting of municipal contracts for public improvements. City of Olive Hill v. Tabor, 143 Ky. 336, 136 S. W. 649; City of Tompkinsville v. Miller, 195 Ky. 143, 241 S. W. 809; Wait v. Southern Oil & Tar Company, 209 Ky. 682, 273 S. W. 473; City of Sebree v. Powell, 221 Ky. 478, 298 S. W. 1103.

The rule of substantial compliance may be quite elastic and made to cover a broad field in its application. We think, however, that, in such matters as these, little departure from a strict observance of the mandatory provisions of the statute should be permitted, and whatever that may be it should appear that there was no prejudicial or harmful result. Looking to the application to the facts of this case, it is to be considered that it was the power to make the contract which emanated from an observance of the condition precedent and not the power to receive bids. Failure to carry the notice on the last day of the period, that is, on October 1st, in all probability resulted in no harm or loss of further bids. The advertisement continued to impart notice of the reception of bids up to the time designated. Billington v. Moore, supra; 62 C. J. 975, note. In the Billington Case the notice of an election was omitted from the weekly paper issued the day before the election. Since it had been carried in the newspaper for the time required, it was held that there had been a substantial observance of the law. In the case at bar it would be different had the advertisement not begun fourteen days before the letting of the contract. We are of the opinion, therefore, that there was a substantial compliance with the law, as we have qualified the term, and that the trial court properly sustained the apportionment lien against the property of the appellants.

The judgment will have to be reversed, however, for it is rendered against the owners personally. The proceeding is in rem, and the statute does not authorize a personal judgment. We have held that, when such has been entered in a suit to enforce a street assessment lien, it constitutes reversible error. Moss v. Andrews Asphalt Paving Company, 229 Ky. 419, 17 S. W.

(2d) 255; Chesapeake & O. R. Company v. City of Olive Hill, 231 Ky. 65, 21 S. W. (2d) 127.

Judgment is reversed and the case remanded for consistent proceedings.