**Ezart F. ASHCRAFT, Appellant,**

v.

**ESTILL COUNTY and its Fiscal Court, etc., and City of Irvine and its City Council, etc., Appellees.**

Court of Appeals of Kentucky.

March 23, 1956.

Rehearing Denied June 1, 1956.

H. M. Shumate, Irvine, for appellant.

J. M. Wolfinbarger, John W. Walker, T. D. Shumate, Irvine, for appellees.

STEWART, Judge.

Ezart F. Ashcraft, a resident taxpayer of Estill County, suing for himself and all other citizens similarly situated, sought in circuit court to enjoin the city of Irvine

and the county of Estill from issuing bonds for the construction of a proposed city-county hospital. The pertinent facts revealed in the record are that at a regular election on November 6, 1951, the citizens of Irvine and Estill County voted on whether to ratify the issuance of general obligation bonds for the construction of a hospital to be financed by the city in conjunction with the county. The city of Irvine voted in favor of a $95,000 bond issue on that date, whereas the county of Estill, voting on a $90,000 bond issue at the same election, failed to satisfy the two-thirds majority requirement. On November 3, 1953, the question was again submitted to the county voters with the result that the $90,000 bond issue was approved.

This suit was instituted to test the validity of the election of November 3, 1953, and the sole question presented is whether official notice of that election was sufficiently advertised in accordance with KRS 66.040. The relevant portion of that statute reads:

"The fiscal court, by order entered of record, shall direct the sheriff of the county to advertise the election and the object thereof for at least thirty days next before the day of the election, in the newspaper published in the county having the largest circulation therein, and if none is published in the county, then by printed handbills posted at the county seat and at three of the most public places in each precinct."

Official notice of the election was published in the Estill Herald in Irvine, a weekly newspaper having the largest circulation in the county, on September 24 and October 1, 1953. No such notice appeared in the succeeding October 8th, October 15th, October 22nd or October 29th editions of that newspaper. In addition to the above insertions, the official advertisement was printed twice in the Irvine Times, a paper of only city-wide circulation in Irvine, on September 25 and October 1, 1953. There is not now, and there was not

then, any daily newspaper published in Estill County.

The lower court adjudged there had been a substantial compliance with the advertisement requirements of the foregoing statute and adjudged the bonds were valid. This appeal challenges that ruling. The same judgment pronounced all the proceedings legal in respect to the voting of the city of Irvine bonds, and no question is raised in this appeal as to the authenticity of the city obligations.

The phrase in KRS 66.040, "at least thirty days next before the day of the election," sets and limits the *minimum time* the official notice must initially appear in the newspaper or be posted, as the case may be, prior to the election, and the case of Pendley v. Butler County Fiscal Court, 229 Ky. 45, 16 S.W.2d 500, 502, touching on this point, emphasized that "no time short of that minimum period [required by the particular law involved] could possibly be considered as a substantial compliance with the statutory provision in that regard." In the Pendley case, where a special election called to vote on county road bonds was advertised for the first time 27 days before the election day, instead of "as much as thirty days 'next before'" that particular day as required by Ky.St. of 1922, § 4307, this Court ruled there was not a material compliance with that statute and the election was declared void and of no effect to authorize the issuance of these bonds. In that opinion this statement is significant: " 'The length of the time during which a notice must be given is quite as substantial as the requirement that notice must be given at all.' " See, also, Billington v. Moore, 168 Ky. 22, 181 S.W. 651.

Newton v. Ogden, 126 Ky. 101, 102 S.W. 865, 31 Ky. Law Rep. 549, considered the manner of computing time in respect to an election under a local option statute which provided, inter alia, such elections shall not be held "within thirty days next preceding" a regular political election, and in that case it was decided the thirty days

should be counted back from the election day and the latter day was properly included as a part of the 30-day period of time. See, also, Central Const. Co. v. City of Lexington, 162 Ky. 286, 172 S.W. 648.

The case of Hatfield v. City of Covington, 177 Ky. 124, 197 S.W. 535, gave an exhaustive treatment of the phrase " 'for at least two weeks just preceding' " the election day and regarded the word "for" as having a special significance and as meaning "throughout" or "during the continuance of." That opinion held the use of "for" called for a continuous publication of the official notice in every issue of the newspaper, except Sunday, during or throughout the prescribed period prior to the election day. Furthermore, it was also held in that case that, if there be only a weekly newspaper, the statute is satisfied by having the notice printed consecutively in every issue, provided the first insertion is made before the time the law states it must precede the election day. See Jenkins v. City of Bowling Green, 251 Ky. 119, 64 S.W.2d 457; Billington v. Moore, supra.

Thus, the decisions of this Court in interpreting the pertinent language of KRS 66.040 require, first, that the publication of the official notice must be given initially at least 30 days next before the day of the election and, secondly, that such notice must be continuous throughout the minimum time limit specified. Applying these two tests to the facts of this case, we find that Estill County did measure up to the first requisite, since it caused the initial notice to be advertised more than 30 days in advance of election day. The last condition, however, was not in any wise met, because, assuming October 1, 1953, was the first official insertion that should have been made in the Estill Herald, in order to commence giving the notice in accordance with the 30-day minimum time limit, no other notice thereafter appeared weekly during the remainder of October, and four other such notices could and should have been published during that month. Continuous advertisement is complied with if the official notice is published as often as possible up until the time of the election. We conclude in this respect there was a departure from one of the essential conditions of the applicable statute which would utterly defeat its purpose if the course followed is condoned.

It is contended news articles appearing in the editions of the newspapers when the official notices were omitted filled in all the gaps and furnished the voters with the necessary knowledge pertaining to the election, but we have written that any information of this character which may be disseminated has no legislative basis and cannot be substituted for the official notice prescribed by law. KRS 66.040 is mandatory as to the publishing and posting of the notices of an election, but the provisions therein concerning the time and manner of such publication and posting are directory only, and a substantial compliance therewith is sufficient. See, Queenan v. City of Louisville, 313 Ky. 816, 233 S.W.2d 1010. We are of the opinion the demand of the statute with reference to publication must not be ignored to the extent we have pointed out in this case, and we cannot, under the circumstances, say there was a substantial compliance with the statute.

We have reluctantly come to the conclusion that we must reverse the judgment in this case, because we believe it is better that such be done and that the people of Estill County be relegated to the holding of another election than that we should destroy the fundamental object of the Legislature in prescribing the manner and time of publishing an official notice for a county bond election.

Wherefore, the judgment is reversed with directions that it be set aside and that a new one be entered adjudging the proceedings of the county bond election invalid.