### Gollar v. City of Louisville, et al.

(Decided March 12, 1920.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Municipal Corporations—Public Improvements—Sewers—Indebt-
edness—Publication of Ordinance.—An ordinance submitting to
the voters the question whether the city should incur an indebt-
edness for the extension of its system of sewers provided that
the ordinance should be published for at least ten days prior to
the election. The ordinance was not published as directed, but

such publicity was given to the ordinance almost continuously from its passage until the election in November, a period of several months, through newspaper items, editorials, advertisements, posters and other means as to show a substantial compliance therewith.

2.  Municipal Corporations—Publication of Ordinance.—The object sought by the publication of an ordinance is to bring it to the attention of the people that they might be thoroughly posted and advised as to its merits and be able to vote intelligently upon the measure, and where the record shows there has been a substantial compliance with the ordinance no other objections appearing, its validity will be sustained. There was neither a constitutional nor a statutory provision requiring publication of the ordinance in this case.

W. W. DOWNING for appellant.

JOSEPH S. LAWTON and DAVIS W. EDWARDS for appellees

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

Plaintiff (appellant) is attacking the validity of an authorized issue of $2,000,000.00 of bonds for the extension of the sewage system of the city of Louisville.

This is a companion suit to that of Ahrens v. City of Louisville, 186 Ky. 585, 217 S. W. 907, in which opinion, while disposing of certain objections to this same bond issue, we expressly refrained from passing upon the validity of the bonds, because of the insufficiency of the petition as to the alleged failure to properly publish and give notice of the ordinance authorizing the issue and of its submission to the voters. But this question is squarely presented by the pleadings in the record before us.

There is no constitutional or statutory provision requiring the publication of ordinances in cities of the first class.

In an act of 1912 (Kentucky Statutes, sec. 3037b-16), is found the authority for the issue of bonds referred to. In section 11 provision is made for the submission to the voters whether the bonds shall be issued and that:

"The ordinance shall provide the date and maturity of such bonds, the rate of interest they shall bear and the total amount to be then issued, and the ordinance shall also contain the necessary details in reference to the execution and delivery of the bonds, . . ."

There is no complaint that any of these requirements were not complied with. The statute nowhere directs that the ordinance be published. However, in section 6 of the ordinance it is provided:

". . . and the mayor is hereby authorized and directed to give public notice of the time, place and purpose of the election upon said question or proposition for at least (10) ten days (exclusive of Sundays) prior to the day of election in each of the daily morning and afternoon papers published in the city of Louisville, *in which notice this ordinance shall be embodied.*"

The effect of the failure to give the ten days' notice provided for was before us in Stuessy v. City of Louisville, 156 Ky. 523, 161 S. W. 564, involving the validity of an issue of certain school improvement bonds. The provisions of the ordinance considered in said case were identical to those above quoted, except that it did not contain the italicized words. The petition in that case alleged and the demurrer admitted that only five days' notice of the election was given. This was held a sufficient compliance with the requirements of the ordinance, the court saying:

"The effect of this decision is, that where the act of the legislature provides that a city council may submit the question of a bond issue to the vote of the people without specifying the kind of notice to be given, the submission of that question by an ordinance duly adopted constitutes all the notice that is necessary to a legal submission of the question, provided a sufficient time elapses between the adoption and publication of the ordinance and the election to afford the voters a reasonable opportunity of informing themselves upon the merits of the question submitted.

"If, however, the period between the publication of the ordinance and the election is of so short a duration as not to afford the voters a reasonable opportunity to so inform themselves, the publication of the ordinance will not be treated as a sufficient notice. In the case at bar the ordinance was published on August 8, 1913, about three months before the election was held. Certainly that was ample notice."

We do not understand the opinion to hold that the bond issue under said ordinance would have been valid had there been no publication of the ordinance or no notice of the election. Indeed, it will be seen from the

excerpt above that but for the fact that it was shown the voters had reasonable opportunity for information, the publication would not have been treated as sufficient.

In the construction of statutes, where the provisions as to the publication are obligatory, for instance, where the verb "shall" is employed, as "such ordinance shall be published," etc., we have held this to be mandatory, and nothing short of a substantial compliance will satisfy the statute. Bybee v. Smith, 22 R. 1684, 61 S. W. 15; Central City Construction Co. v. City of Lexington, 162 Ky. 286, 172 S. W. 648; City of Newport v. Glazier, 175 Ky. 608, 194 S. W. 771; Hatfield v. City of Covington, 177 Ky. 124, 197 S. W. 535. A like conclusion was reached in McCreary v. Speer, 156 Ky. 783, 162 S. W. 99, in which it was held that section 256 of the Constitution as to the publication of proposed amendments to that document was mandatory.

Appellant contends the provisions of the ordinance under consideration are mandatory, appellees insist they are directory merely, a question, however, we find it unnecessary to decide.

The answer is supplemented with forty exhibits showing the character, extent and varied ways in which, over a wide expanse of time, the ordinance, its contents and purposes were brought before the people. Beginning with an article in the morning newspapers the day after the ordinance passed the lower board of the general council, and which was heralded with prominent head lines, the publicity was continued on up to the day of election. It would seem that almost every scheme and device known to the advertising expert were resorted to, in news items, editorials, cards, placards, posters, booster organizations, maps, advertisements of divers kinds, screens at a number of the leading motion picture houses flashed between reels; all these things, and many others, played their part in the general plan to bring the importance of the bond issue before the populace. Much of this we are told was instigated and inspired by the mayor. The newspapers were most liberal contributors to the publicity.

The bond issue was endorsed by the Optimist, Rotary and Kiwanis clubs of the city, by the board of trade and many other civic and welfare organizations, all of which appeared in the newspapers from time to time. There was a literal bombardment of publicity culminating in

a personal campaign at the polls of interested workers who volunteered their services. From May 21st to November 4th, the day of election, probably not a week, and for the last five weeks not a day, passed that the matter was not brought to the attention of the voters.

It is difficult to see how much greater publicity could have been given to the matter, and it would seem almost impossible with these matters so constantly and continuously before them that many citizens of Louisville could have failed to know and understand the nature, the object, the need and the purpose of the bond issue. True the ordinance in its entirety was not embodied in any of the articles or advertisements, but the main points were featured time and again. The object sought by publication is to bring the ordinance to the attention of the people, that they might be thoroughly posted and advised of its import, and thus enabled to vote intelligently upon the measure.

The authorization of a bond issue of such magnitude and the assumption of the indebtedness created thereby are matters of vital moment and consequence to the voters and taxpayers. Before entering into such an undertaking and shouldering such a burden the matter should be explained or brought out in such a manner as that those who read may understand. This was done, and thanks to the newspapers and co-operating agencies, in a far more effective, forceful and readable way than could or would have been accomplished through the publication of the ordinance alone. Few people read or pay any attention to official advertising, while the plan adopted put the bond issue so prominently, constantly, and interestedly before the public that they were practically bound to know about it. There was in deed and in truth a substantial compliance with the ordinance. The issue was carried by more than the necessary two-thirds vote.

Judge Cooley in his work on Constitutional Limitations, 7th ed. p. 113, says:

"These cases perhaps sufficiently indicate the rules, so far as any of general application can be declared, which are to be made use of in determining whether the provisions of a statute are mandatory or directory. Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly, and prompt conduct of the business, and

by a failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it may still be sufficient, if that which is done accomplishes the substantial purpose of the statute."

To the same general effect is 15 Cyc. 320 *et seq.* on the subject of a substantial compliance with the law relative to the notice of elections.

The lower court properly overruled the demurrer to the answer.

The judgment is affirmed.