# Terrill et al. v. Taylor et al.

(Decided Jan. 14, 1938.)

476

J. J. GREENLEAF for appellants.

GEORGE C. ROBBINS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

March 1, 1937, was Monday, and the first Monday in each month was the designated day for the holding of the regular term of the county court of Madison county by the county judge. The court met in its courtroom on that day, and a number of orders were made and entered, at the close of which there was this entry: "Court ordered adjourned," and the page or pages were then signed by the county judge. The next day other orders were entered, preceded, however, by the words "Court met." At the close of that day a similar adjourning order was entered and signed by the judge. The same method was pursued each day until the close of March 9th, with the exception that on one of the intervening days (March 5th) no order was entered of any kind. On March 8th a petition was filed with the clerk of the court for the holding of a local option election throughout the county. A notation of its filing was made on that day with the recitation that it was taken under consideration. On the next day (March 9th) an order appears sustaining the motion for an election and calling it for May 18, 1937. The county judge was not in the regular county courtroom when any of the entries were made on the record of the court after March 1st, the day when the court convened, but the clerk took the record to his private office following each day's entries where the judge would sign the orders, including the indicated order of adjournment.

The clerk gave to the sheriff a copy of the order calling the election, but he never published it either by posted notices or in any newspaper published in the county. Instead he posted and published his synopsis notices in the places and manner required by law, thus worded and constructed:

"Local Option Election
"May 18, 1937
"By Order of the Madison County Court, there will

be a county election held for the purpose of taking the sense of the legal voters of this county as to whether spirituous, vinous, or malt liquors shall be sold, bartered or loaned therein.

"John McWilliams
"Sheriff of Madison County."

At the time there were three newspapers published in the county, one of which, The Richmond Register, was a daily one, and the sheriff caused the notice to be published in an issue of that paper on April 23, 1937, and it was repeated in the issue of the paper of April 30th following—thus making only two insertions in the daily paper, the last one of which was 18 days from the date of the election—there being no newspaper publication made after April 30th.

At the election local option was adopted by a majority of 199 votes. Following the certification of the returns, the appellants, pursuant to statutory requirements, inaugurated this contest proceedings against the appellees—who were properly such—and in their petition the validity of the election was attacked upon these grounds: (1) That the order calling the election was not made at a regular session or term of the Madison county court; (2) as entered the order contained no notice of the places at which or the hours between which the election would be held, nor did it contain a formula of the question to be propounded to the voters on the official ballots for the election; (3) that the notice, supra, published by the sheriff, even if otherwise legal, did not itself notify the voters of the day of the election with sufficient clearness to make it legal; (4) the notice itself was insufficient, since it was not a copy of the order of the court calling the election, but only a synopsis of it by the sheriff as to his interpretation of the contents of the order; and (5) that the publication of the notice as given, even if sufficient, was not published in the newspaper of the county according to the requirements of the statute, in that it did not appear in the paper "for 14 consecutive days before the election," and that there was no publication whatever of it for 18 days preceding the election. Those grounds were appropriately contested by contestees in their pleadings and, after evidence taken and the facts proven, as above outlined, the cause was submitted to the court and it dis-

missed the petition, from which judgment contestants prosecute this appeal.

At the outset, and by way of elimination, it should be said that none of the complaints contained in ground (2) remotely possess merit, since the hours and places between and at which elections are held are fixed by law, and there is no requirement or duty on the part of any officer having connection with the calling or holding of such elections to make in any manner any such designations. Cassady v. Jewell, 268 Ky. 643, 105 S. W. (2d) 810. That ground, therefore, becomes entirely eliminated from the case. Grounds (1), (3), and (5) approach merit much nearer, but we have concluded not to determine whether liberality of construction of the statute would uphold the action of the trial court in denying them, since we are convinced that the remaining ground (4), attacking the form of notice and advertisement of the election, should be sustained.

Under a generally applied interpretative rule, courts are loathe to declare invalid such adopting elections by the people resulting in the temporary nullification of their expressed will, as well as entailing upon them the cost and incident delay of a futile election. Following that rule, no invalidating adjudication will be rendered for attacks founded in departures from directory provisions of the statute. However, and at the same time, courts are admonished that the result, if the measure voted upon should be adopted, works a radical change in the political status of the territory holding the election, the effect of which is to install for the particular territory a law of more or less radical departure from conditions existing before the election. Therefore, the laws enacted whereby such radical changes may be made by them should be followed with more than a mere approach to substantial compliance with their mandatory requirements. We are aware that the general rule applicable to such elections is that a substantial compliance with the statute is sufficient, but, when the actions actually taken with reference to *mandatory* provisions so widely depart from them as to create a failure of compliance and an ignoring of them, it becomes the duty of courts to so find and adjudge accordingly. All of the statutory provisions with reference to the giving of notice of the election are for the purpose of informing the voters of the territory to be affected

for a sufficient length of time to enable them to mature the proposition in their minds and to determine upon which side they choose to cast their ballots.

Section 2554c-5 of our statutes—which is the only one prescribing for notice of the holding of the election to be given by the sheriff—not only requires notice itself to be given, but it specifies what *is* notice of the election, and ·expressly designates the duties of the sheriff in the performance of that requirement. Its first sentence requires the county court clerk within 5 days after the entry of the order calling the election to give to the sheriff a certified copy of it; while the next sentence, among other things, prescribes what the sheriff shall do with that certified copy—the language being: ''It shall then be the duty of the said sheriff to have *same* published in some weekly or daily newspaper published in the county for at least two weeks before the election, and also to advertise *same* ·by written or printed handbills posted at not less that five conspicuous places in each precinct of the county for the same length ·of time,'' etc. (Our italics.)

In the case of Wilson v. Lawrence, 268 Ky. 179, 103 S. W. (2d) 955, 959, which was a local option contest, one of the grounds relied on by the contestants was that the sheriff in discharging his duties relating to the giving of notice of the election had posted and published only a certified copy of the order of the court calling the election and which he (the sheriff) had not signed. In overruling that ground we said: ''It is manifest that this contention is frivolous and of no merit, in that the provision of section 5 of the act, quoted supra, requiring the sheriff to publish and post notices of the called election, nowhere recites that such notices, when posted by him in the county's several precincts, shall be signed by him, but only directs that he shall post a certain number of certified copies of *the court's order* in conspicuous places within each of the county's election precincts. *It is the court's order,* calling the election, that is to be given this publicity, advising the public throughout the county of a· local option election having been called by the county judge, to be held in the county precincts upon the day named. The publication and posting of a certified copy of the court's order could be made no more effective or informing, as to the fact of the called ·election, by the sheriff's affixing his own signature

thereto. It is a certified copy of *the court's not the sheriff's order* that is directed by the act to be published." (Our italics.) The opinion then recites that the sheriff had literally complied with the statute in that regard, and we overruled that ground.

That holding was followed in the later case of Campbell v. Mason, 269 Ky. 128, 106 S. W. (2d) 100; and the same conclusion and interpretation was again upheld in the still later case of Winstead v. Clarke, 269 Ky. 594, 108 S. W. (2d) 518, in which the mandatory terms of the statute were further emphasized by the use of this language: "The contention that the notices of election [it being a local option election] are invalid because not signed by the sheriff is based upon the theory that it is the duty of the sheriff himself to give notice of the election. As a matter of fact, the sheriff is simply made the conduit for the publication of the order by the county court calling the election." In substantiation of that statement the Wilson and Campbell Cases are cited. See, also, to the same effect the still later case of Murphy v. Cundiff, 269 Ky. 645, 108 S. W. (2d) 644. The interpretations in those cases are inevitable from the language of the statute itself, which is so plain as that the proverbial "wayfaring" man could not be led astray. For a sufficient reason the Legislature in enacting the statute prescribed *precisely* and *exactly* the duties of the sheriff with reference to giving notice of the election, and those duties consists of making the necessary posting and publishing of the *certified order* of the county court calling the election. Consequently in the cases supra we held that it was not required by the statute that the sheriff should sign his name to the court's order on the posted notices or the publications thereof in the paper, although such signing by him would not render the notice invalid. The reason, no doubt, for that statutory requirement was to not leave it to the sheriff to interpret the order calling the election, but to place it in its entirety before the voters having the right to participate in the election, for them to become informed therefrom of the precise proposition submitted to them, and not to be confined to a synopsis of that order that the sheriff himself might prepare. Not being required to sign the notices himself, and the subject matter of the notice not being certified to by the judge of the county court calling the

election, the mere signature of the sheriff to his synopsis of what the order contained was and is not an official act on his part so as to give verity to what is contained in his published synopsis. The cases referred to, as well as the language of the statute itself, clearly point out our duty in this case and from which there is no escape. Plainly it is to hold that the advertisements made by the sheriff in this case fail to comply with a mandatory requirement of the statute, and which renders it unnecessary, we repeat, to consider any other ground except No. 2, which we have already disposed of adversely to contestants.

Before closing this opinion, we deem it expedient and not improper to offer the suggestion that public functionaries vested with the authority to call elections in subdivisional units of the state, wherein the voters therein may choose whether or not a particular law shall become operative in that territory—as well as every one having duties to perform in connection with such elections—should carefully read and consider the statute under which the election is held. The directions are most generally plain, and in the particular character of election now involved nearly all of them have been heretofore construed, and there is not a remnant of excuse for departure therefrom. It might also be suggested that the promoters of such elections would profitably serve themselves as well as the people of the particular territory if they would consult and advise with some conscientious attorney in directing them along the paths of the statute so as to avoid fatal errors and to insure compliance with the statute all along the line. The cost of obtaining such advice is insignificant compared with the loss to the particular unit involved of the amount of expenses incurred in holding an illegal election, as well as a possible loss to the territory affected of the benefits of the law sought to be adopted. Such recommendatory remarks are made for the benefit of those to be affected by such elections and, if followed, would largely guarantee permanency of the expression of the will of the people as well as the saving of unnecessary expense in the holding of an illegal election.

For the reasons stated, the judgment is reversed, with directions to set it aside and for proceedings consistent with this opinion; the whole court sitting.