233 S.W.2d 1010 (1950)
QUEENAN, Clerk of Jefferson County Court
v.
CITY OF LOUISVILLE.
Court of Appeals of Kentucky.
November 3, 1950.
*1011 Lawrence G. Duncan, Louisville, for appellant.
Gilbert Burnett, James W. Stites, James E. Thornberry and Robert W. Meagher, all of Louisville, for appellee.
REES, Justice.
This appeal is from a judgment of the Jefferson Circuit Court in a case submitted upon an agreed statement of facts pursuant to Section 637 of the Civil Code of Practice. The question presented is whether four ordinances of the City of Louisville have been legally advertised so as to authorize the appellant, James F. Queenan, Jefferson County Clerk, to place certain bond issue questions on the ballot to be used by the voters of the City of Louisville in the general election to be held on November 7, 1950. The Circuit Court answered the question in the affirmative.
The Board of Aldermen of the City of Louisville duly enacted Ordinances Nos. 231, 232, 233 and 234, Series 1950. Ordinance No. 231 ordered an election for the purpose of ascertaining the wishes of the qualified voters of the City concerning the incurring of an indebtedness and the issuance and sale of bonds therefor in the sum of $5,000,000 to finance a program to facilitate the movement of traffic in the City. Ordinance No. 232 provided for a bond issue of $4,000,000 for acquiring rights of way for the construction of a system of express roadways. Ordinance No. 233 provided for a bond issue of $2,850,000 for the elimination of grade crossings, and Ordinance No. 234 provided for a bond issue of $1,500,000 for the extension of park and recreational facilities. Each ordinance prescribed the form of the question to be printed on the ballots to be used by the voters in the general election on November 7, 1950. KRS 66.050(3), in so far as it is pertinent here, provides: "In cities of the first class, the ordinance calling the election shall be advertised for the two weeks next preceding the election in a newspaper of daily circulation in the city."
Each of the ordinances contains a provision which reads: "The Mayor is hereby authorized and directed to give public notice of the time, place and purpose of the election upon said question or proposition for at least two (2) weeks prior to the time of the election in one (1) daily newspaper published in the City of Louisville, in which notice this ordinance shall be reproduced in full."
The agreed facts in the present case are that the first paid advertisement of the ordinances appeared in the Louisville Times on Friday, October 27, 1950, just twelve days, including Sundays, before the election. Widespread publicity in the press and public forums of the City has been given to the ordinances over a period of months, including many articles in the Louisville Courier-Journal and the Louisville Times, both daily newspapers of general circulation in the City. In addition to the newspaper publicity, the ordinances have been publicly endorsed by numerous organizations having many thousands of members in the City, and has been opposed by a resolution of the Louisville Federation of Labor having approximately 114 local unions with a total membership in excess of 40,000. The ordinances have been debated on the radio in round-table discussions or otherwise over one of the local radio stations and on numerous newscasts and telecasts over all the stations in the City of which there are approximately six. All of these acts occurred more than two weeks prior to the date of the election and will continue until the election is held. A citizens committee of over 100 members was organized on October *1012 24, 1950, and since then has assiduously worked for the bonds and to acquaint the public with the need therefor. Numerous news articles concerning the proposed bond issues which have appeared in the Louisville Courier-Journal, commencing with the edition of October 8, 1950, were filed with the agreed statement of facts. The article of October 8th appears on the front page of the paper with a heading in large type which reads: "VOTERS TO DECIDE IN NOVEMBER WHETHER CITY SHOULD ISSUE A TOTAL OF $13,350,000 IN BONDS ALDERMEN GIVE FINAL APPROVAL TO FOUR PROPOSALS; EACH MEASURE NEEDS TWO-THIRDS MAJORITY." A full explanation of the four ordinances follows, and the article concludes by setting out in full the proposals copied from the ordinances as they will appear on the November 7th ballot. These proposals contain the substance of each ordinance. On October 26, 1950, the day before the first paid advertisement appeared in the Louisville Times, editorials on the proposed bond issues appeared in both the Louisville Courier-Journal and Louisville Times, and a news article on the question appeared on page 1, Section 2, of the Louisville Courier-Journal. On October 25, 1950, three long news articles on the subject appeared in the Louisville Courier-Journal. One article was prominently displayed on page 1 of Section 1, one on page 1 of Section 2, and one on page 7 of Section 2. News articles also appeared in both papers on October 24th.
It is appellant's contention that in elections involving bond issues where there is a statute requiring advertising of the ordinance for a certain minimum time before the election, the provisions of the statute are mandatory in such respect and any advertising which appears in the newspapers for a shorter time than the minimum time prescribed cannot be considered substantial compliance with the statute. Appellant cites a number of cases in support of this contention, but he relies principally upon Hatfield v. City of Covington, 177 Ky. 124, 197 S.W. 535; Pendley v. Butler County Fiscal Court, 229 Ky. 45, 16 S.W.2d 500, and Douthitt v. Board of Trustees of Newcastle, 239 Ky. 751, 40 S. W.2d 335. In these cases and in others cited by appellant it was held that the minimum time prescribed by the statute for the advertisement of the election was mandatory, but in many of the opinions it was said in the same connection that the provisions must be substantially complied with. In none of the cases holding elections invalid because not officially advertised in strict compliance with the minimum time requirement of the statute do we find, as we do here, the wealth of other notices of the election by unofficial publication in newspapers and by other means extending through and beyond the required minimum time. We know of no better means to bring to the attention of the voters the election and the nature and purposes of the bond issue than those appearing in the present case. The purpose of the Legislature in requiring advertisement of ordinances calling elections on bond issues was to afford the voters ample opportunity to become informed on the questions to be submitted. If that opportunity has been furnished and the purposes of the statute accomplished, the election should not be invalidated or prevented by a strict and narrow construction. Common sense should be exercised in the interpretation of a statute as well as in its enactment. In this connection we must not overlook the Legislature's direction to the courts when construing its acts. KRS 446.080 reads in part: "All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature * * *."
In Gollar v. City of Louisville, 187 Ky. 448, 219 S.W. 421, 422, the validity of an authorized issue of $2,000,000 of bonds was attacked because there had been no advertisement as required by the ordinance calling the election. There was no statute requiring publication of the ordinance, but the ordinance directed the mayor to advertise the election for at least ten days (exclusive of Sundays) prior to the day of election in each of the daily *1013 papers published in the City and to embody the ordinance in the notice. The ordinance in its entirety was never published, but the election and the proposal to be voted on received a large amount of publicity in various ways. Without deciding whether the provisions of the ordinance as to giving notice of the election were mandatory or directory, the court held that there had been substantial compliance. In the course of the opinion it was said:
"It is difficult to see how much greater publicity could have been given to the matter, and it would seem almost impossible, with these matters so constantly and continuously before them, that many citizens of Louisville could have failed to know and understand the nature, the object, the need, and the purpose of the bond issue. True, the ordinance in its entirety was not embodied in any of the articles of advertisements, but the main points were featured time and again. The object sought by publication is to bring the ordinance to the attention of the people, that they might be thoroughly posted and advised of its import, and thus enabled to vote intelligently upon the measure.
"The authorization of a bond issue of such magnitude and the assumption of the indebtedness created thereby are matters of vital moment and consequence to the voters and taxpayers. Before entering into such an undertaking and shouldering such a burden the matter should be explained or brought out in such a manner as that those who read may understand. This was done and thanks to the newspapers and co-operating agencies, in a far more effective, forceful, and readable way than could or would have been accomplished through the publication of the ordinance alone. Few people read or pay any attention to official advertising, while the plan adopted put the bond issue so prominently, constantly, and interestedly before the public that they were practically bound to know about it. There was in deed and in truth a substantial compliance with the ordinance."
The most recent expression on the subject by this court was in Hall v. Sturgill, 305 Ky. 445, 204 S.W.2d 496, where the question of the time of advertising a special election under the local option statute was involved. KRS 242.040, after requiring publication in a newspaper of the order calling the election, provides that "the sheriff shall also advertise the order by written or printed handbills posted at not less than five conspicuous places in each precinct of the county for two weeks before the election". September 16th was the last day for the posting of the notices. There were 54 precincts in the county, and the notices required by the statute were posted in strict conformity therewith in 47 precincts. In the remaining 7 precincts the notices were posted on September 17th. It appears from the opinion in the case that an unusually large vote was cast in the election, and that printed circulars advertising the election and urging people to vote had been widely distributed in the county. The question presented was stated as follows in the opinion: "Under the statement of facts hereinabove made we have concluded that there was a substantial compliance with the statute in regard to the posting of the notices in the various precincts, but the exact question before us is whether that statute is mandatory or directory. If directory, a substantial compliance is sufficient. If mandatory, it must be strictly complied with."
After referring to the Pendley, Douthitt and Gollar cases and other authorities, the question posed earlier in the opinion was answered as follows: "We have concluded that KRS 242.040 is mandatory as to the publication and posting of the notices of an election, but that the provision concerning the time of such posting and publication is directory only, and that a substantial compliance therewith is sufficient."
It was held that there was a substantial compliance with the statute, and that the election was valid.
We think the rule announced in the Hall case is sound, and in the light of the agreed statement of facts we are constrained to hold that this case falls squarely within that rule. It cannot be said with any show of reason that any elector of the City of *1014 Louisville will be denied the privilege of voting at the election for want of sufficient notice.
Judgment is affirmed.
LATIMER, J., dissenting.
THOMAS, J., absent.