R. D. LYON, Individually, and as a citizen, resident and taxpayer of Warren County, etc., Appellant,

v.

COUNTY OF WARREN, Kentucky, Appellee.

Court of Appeals of Kentucky.

June 19, 1959.

G. D. Milliken, Jr., Bowling Green, for appellant.

Joseph R. Rubin, Louisville, for appellee.

STANLEY, Commissioner.

We have for review a declaratory judgment validating the issuance of $650,000 of bonds by Warren County for the purpose of remodeling, enlarging and equipping its

present county hospital. The amount thus to be appropriated will be supplemented by the federal Hill-Burton Act. Title 42 U. S. C.A. § 291 et seq. The bonds were approved by the voters of the county at the regular November, 1958, election. There were 3,632 votes in favor and 1,739 votes against the bond issue. Obviously, more than two-thirds of the votes on the question were favorable, which is that required by KRS 66.040.

The authority for the county to establish, construct and furnish a hospital and issue voted bonds to provide the money is KRS 216.010–216.050. Another statute covering general provisions as to bonds of counties to finance the building, repairing or re-modeling of public buildings is KRS 66.010–66.040. This latter statute is more specific in its provisions than the former.

KRS 66.040 provides that the fiscal court shall direct the sheriff "to advertise the election and the object thereof for at least thirty days next before the day of the election." This provision as to time was in the statutes for many years. But in 1958 the General Assembly enacted a comprehensive statute defining and dealing generally with the publication of legal notices. Ch. 42, Acts of 1958, now KRS 424.110 et seq. Of particular application to the present case is KRS 424.130 relating to "Times and periods of publication." It declares that "(1) Notwithstanding any provision of existing law to the contrary, the times and periods of publications of advertisements required by law to be made in a newspaper shall be as follows:" Paragraph (c) of that subsection of the statute provides that any advertisement "such as one for the purpose of informing the public or the members of any class of persons of the holding of an election * * * shall be published once a week for two consecutive weeks." Paragraph (d) provides that whenever any advertisement is required to be "once a week for two successive weeks, the publication shall be so made that the final publication will appear not later than two days before the day upon which the advertised event

will occur or upon or by which the advertisement contemplates that an act may or shall be done, and not sooner than some day during the week preceding the week in which falls the day of such event or act to be done, * * *."

We are of opinion that the terms and conditions prescribed by the 1958 Act, KRS 424.110 et seq., superseded and effectually repealed all other conflicting statutory provisions.

So, it was required that the advertisement of the present election must have been published "once a week for two consecutive weeks." It is argued on the appeal that this provision was not complied with.

The orders of the fiscal court directed the sheriff to publish notice of the election in a designated local daily newspaper "commencing not less than thirty days prior to the date of the election and continuing thereafter in each issue of said newspaper until the election date." It is apparent that the fiscal court had the provisions of the repealed statute in mind and overlooked the provisions of the 1958 Act. The terms of the statute are controlling rather than the order of the fiscal court. Folks v. Barren County, 313 Ky. 515, 232 S.W.2d 1010; Pelfrey v. Board of Education, Ky., 273 S.W.2d 353.

The official notice of the election was first published on October 3, thirty days prior to the election, which was held on November 4. The second publication was on Sunday, October 26, nine days before the election, and the last publication was October 31, which was Friday of the same week.

The advertisement or notice of October 3 was outside the provisions of the current statute. The other two publications were both during the week preceding the week in which the election was to be held. The "final publication" met the condition that it should be "not later than two days before

the election." But there was no publication in the preceding week. It must be said, therefore, that the condition of publication "once a week for two consecutive weeks" or as prescribed by the statute, were not strictly complied with. See Jenkins v. City of Bowling Green, 251 Ky. 119, 64 S.W.2d 457, as to the legal meaning of the phrase "for two consecutive weeks" required at the time for advertising of the letting of a public works contract.

We have had many cases where officers charged with the responsibility of advertising elections have carelessly or for other cause failed to comply with the simple and explicit terms of. the statutes respecting publication of official notices of elections and placed the validity of the elections in jeopardy and subjected themselves to charges of misfeasance. It is hard to understand why such an important procedural requirement should be ignored, as was done in the present case, where there was so much depending upon a compliance with the law. As has occurred in many other cases because of carelessness, the circuit court has been and this court is confronted with the question of whether to hold this election void and thereby nullify the expressed will of more than two-thirds of the voters of Warren County and perhaps deprive the county of an equal federal appropriation for the enlargement and improvement of their county hospital.

■ The statutory provisions with reference to publicizing a special election or a special proposition to be voted on at a regular election are for the purpose of informing the electorate a sufficient length of time to enable them to arrange to attend the election and to make up their minds on how to vote upon the proposition. Terrill v. Taylor, 271 Ky. 475, 112 S.W.2d 658. Where that purpose appears to have been accomplished by a substantial compliance with the statutory provisions as to times and period of publication, the election ought not and will not be voided. Queenan v. City of Louisville, 313 Ky. 816, 233 S.W.2d 1010;

Ashcraft v. Estill County, Ky., 290 S.W.2d 31.

■ In determining whether what was done was sufficient, a more liberal regard for the term "substantial compliance" should be had where there is a particular matter to be voted upon at a regular or general election fixed by law for choosing public officers (as in the present case) than where there will be a special or called election at a time not fixed by law to vote upon a particular proposal. The voters are likely to attend a regular election but not a special election. 18 Am.Jur., Elections, §§ 106, 110; 29 C.J.S. Elections §§ 71, 74. Cf. Furste v. Gray, 240 Ky. 604, 42 S.W.2d 889.

In reaching a conclusion as to the substantiality of the compliance with the law, or the effect of an irregularity in the official notice, the court has often considered whether the voters otherwise had full and actual notice of the election and of the question submitted and whether the great body of the people had actually expressed themselves at the polls.

■ On the first point we have held that while official notice is mandatory and cannot be omitted, the courts may consider extrinsic or unofficial notices as supplemental thereto.

■ The evidence in this case is that there was a vigorous campaign waged for and against the issuance of the bonds. Many feature articles and publicly sponsored advertisements were published in the local newspapers, and several editorials were written concerning the bond issue from October 12 through the day of the election. There were numerous radio broadcasts during the period, and 20,000 cards and explanatory folders were distributed and 150 large signs were posted. Numerous speaking rallies were held boosting the project. Thus, it may be said that the irregular official notices of the election were supplemented by what Judge Rodes, the trial judge, described as a "deluge of publicity that the voters could not have

escaped being informed of the election."
See Gollar v. City of Louisville, 187 Ky.
448, 219 S.W. 421; Queenan v. City of
Louisville, 313 Ky. 816, 233 S.W.2d 1010.

The returns of the election manifest a
full vote upon the proposal. As stated, 5,-
362 votes were cast on the question. This
is only 102 less than were cast in an elec-
tion for judge of the Court of Appeals and
578 less than in a more hotly contested con-
gressional race.

We, therefore, concur in the judgment of
the circuit court that in these circumstances
the notice of the advertisement of the elec-
tion should be deemed a substantial com-
pliance with the statutory provision for
official notices, the object thereof having
been fully accomplished.

█ We agree also with the conclusion
of the trial court that enlarging, remodel-
ing and equipping the present county hos-
pital, for which purposes the present bond
issue was submitted and voted, is within the
purview of the statutes, KRS 216.010–216.-
130, which authorize a county to construct
and equip a hospital, and of KRS 66.010 to
"build, repair or remodel * * * public
buildings in a county" and issue bonds to
finance the same. Kesselring v. City of
Louisville, Ky., 257 S.W.2d 596.

The judgment is affirmed.

Dissenting opinion By Judge Sandidge.

I agree with the admission in the opin-
ion that the requirements of the statute
as to notice and advertisement were not
complied with. I disagree with the con-
clusion of the majority that there was sub-
stantial compliance. The court cannot jus-
tify yielding to the temptation to cut cor-
ners in disregard of the legislative edict
on the subject. However, that is not the
primary reason for my dissent.

The action was instituted under the De-
claratory Judgment Act for the purpose
of having it ultimately adjudged by this
court that the bond issue involved is valid.

A present actual controversy is a prerequi-
site to the maintenance of an action for a
declaration of rights. There was no such
controversy in this "litigation."

Normally, an action is instituted by a
taxpayer to test the validity of a bond
issue. Here the action was brought in the
name of the county alone as plaintiff. The
complaint erroneously alleged the county
was a body corporate, with power to sue,
et cetera, when everyone should know it is
a political subdivision of the state, and that
it can sue only through authorization of the
fiscal court. There is nothing in the record
to indicate the granting of such authority.
The action was filed by a nonresident at-
torney on behalf of the county, rather than
by the county attorney. On the day it was
filed the city solicitor of Bowling Green, as
attorney for defendant, R. D. Lyon, and
the nonresident counsel filed a joint motion
requesting that Lyon be permitted to de-
fend on behalf of himself and all other
citizens and taxpayers of the county. An
order to that effect was entered. There-
upon on the same day an answer was filed
for the class defendant, in which all alle-
gations of the complaint were admitted, ex-
cept the immaterial one that the voters
were notified of the election through means
other than that prescribed by the statute.
The complaint alleged there was a "bona
fide" controversy between plaintiff and de-
fendant and the members of the class rep-
resented by him, but this was a mere con-
clusion. The only thing alleged which pur-
ported to show any type of disagreement
was that foreign counsel for the bonding
house, which contemplated purchasing the
bonds, would not approve the purchase
without a decision of this court upholding
their validity, and that same would not be
approved by the state local finance officer
without such decision. The attitude of the
foreign attorney and local finance officer
hardly created the type of controversy re-
quired under the Declaratory Judgment
Act; but, even if it should be assumed it did,
neither the attorney nor finance officer was

a party to the action. There were no facts alleged indicating any actual controversy between plaintiff and defendant.

On the next day after the petition and answer were filed, testimony was heard in open court to show the kind and amount of publicity, other than what was required by the statute, that was given to the proposed election. Counsel for defendant cross-examined only one of many witnesses, and then prompted him with three or four questions that were more favorable to plaintiff than to his client. It is admitted in the first sentence of appellee's brief that this is "a friendly test suit."

It is perfectly obvious from the record that no actual controversy was or is involved in the "litigation." It was brought solely to satisfy the whims of the attorney for the prospective purchaser of the bonds and the local finance officer, neither of whom was a party.

Both the lower court and this court were thereby unjustly imposed upon. Everyone should know that if there is no appeal from a judgment of a circuit court in Kentucky within thirty days after it is entered, the judgment is as final and binding as any decision of this court. The time of this court should not be consumed with such unnecessary and useless appeals. In considering same the court is not acting in a judicial capacity, but is doing purely administrative work to please bonding houses and their counsel. Perhaps the approval of a bond issue may be of assistance in reselling the bonds, but the Court of Appeals should not engage in such rubber stamp activities.

Statements of the Court to the contrary in Selle v. City of Henderson, 309 Ky. 599, 218 S.W.2d 645, are unsound, and that decision should be overruled.

Of course, when actual and meritorious controversies are presented with respect to a bond issue, this court should and will judicially determine them.

I would reverse the judgment of the lower court. Judges Bird and Eblen join in this dissent.