**William A. TURRELL, Appellant,**

v.

**BOARD OF EDUCATION OF MARSHALL COUNTY, Kentucky, et al., Appellees.**

Court of Appeals of Kentucky.

May 30, 1969.

Dandridge F. Walton, Calvert City, for appellant.

John C. Lovett, Benton, for appellees.

STEINFELD, Judge.

Appellant, William A. Turrell, a citizen, resident, taxpayer and wage earner of Marshall County, sued for himself and the class of all other persons similarly situated (CR 23.01) attacking an occupational license tax of ½ of 1% levied pursuant to KRS 160.605. After being authorized to proceed for the class (6 Ky. Practice, Clay 341, Comment 2), issues were joined and then appellees moved for summary judgment. CR 56.02. Affidavits and exhibits supported the motion disclosing that there was no genuine issue of any material fact. The motion was sustained, judgment was entered dismissing the complaint, and Turrell appealed. We affirm.

Although not required to do so "* * * on decisions of motions under Rule * * * 56 * * *" the trial court made extensive findings of fact and conclusions of law which have been most helpful to us in considering the issues presented on this appeal. It found that after "* * * a detailed survey of educational opportunities in Marshall County * * *" the State Department of Education had recommended merger of the Benton Independent and Marshall County school districts which embraced the entire county, and that one central high school be constructed. The merger was agreed upon and "(I)n order to obtain the necessary revenues to support a bond issue to finance such construction and to obtain funds to finance * * *" the program new taxes were necessary. On May 13, 1968 the Benton board, and on June 3, 1968, the Marshall board requested the Marshall County Fiscal Court "* * * to levy an Occupational Receipts License Tax as provided in KRS 160.605."

The general assembly of 1966 had authorized an occupational license tax for schools. KRS 160.603, a part of that act, provided as follows:

"No school district board of education shall request the fiscal court to levy * * * the school taxes authorized by * * * (KRS 160.605) * * * until after compliance with the following:

"(1) The county school district board of education shall give notice of any proposed request for the levy of one of the school taxes authorized by KRS 160.593 to 160.597, 160.601 to 160.627, 160.633 to 160.648. Notwithstanding any statutory provisions to the contrary, notice shall be given by causing to be published, at least one time in a newspaper of general circulation published in the county or by posting at the courthouse door if there be no such newspaper, the fact that such request is being proposed. Said advertisement shall state that the county district board of education will meet at a place and on a day fixed in the advertisement, not earlier than one week and not later than two weeks from the date of the advertisement, for the purpose of hearing comments and complaints regarding the proposed increase and explaining the reasons for such proposal.

"(2) The county school district board of education shall conduct a public hearing at the place and on the date advertised for the purpose of hearing comments and complaints regarding the proposed request and explaining the reasons for such proposal."

▮ Turrell contends that the enabling act violates § 29 of the Kentucky Constitution. We rejected a similar contention in Sims v. Board of Education of Jefferson County, Ky., 290 S.W.2d 491 (1956), which involved an occupational tax in counties containing cities of the first class. We consider that case dispositive of the issue of constitutionality raised here.

The two boards caused to appear on June 12, 1968, in a newspaper of general circulation, a notice reading as follows:

"The Marshall County Board of Education and the Benton Independent

Board of Education will have a public hearing Thursday, June 20, 1968, at 7:30 p. m. at the Courthouse, Benton, Kentucky. This hearing will be in compliance with House Bill #1 pertaining to the permissive ½ of 1% occupational tax for school construction in the school districts. All interested parties are invited.

"Reed Conder, Secretary Marshall County Board of Education.

"Joe P. Duke, Secretary Benton Independent Board of Education."

On that same day the newspaper carried on the front page under headlines "Public Hearing Thursday" the story that there would be " * * * a public hearing Thursday, June 20, 1968 at 7:30 p. m. at the Courthouse in Benton, Kentucky, * * * pertaining to the permissive ½ of 1% occupational tax that has been proposed by the two school boards." No other advertisement appeared. A public hearing was held at that time and place and on July 2, 1968 the "Fiscal Court adopted an Order and Resolution * * * providing for the levy of *A* occupational tax for schools in Marshall County as provided for in KRS 160.605." Shortly thereafter the resolution and order was amended.

Appellant contends that the notice did not comply with the statute because it did not "* * * state that the county district boards of education will meet * * * for the purpose of hearing comments and complaints regarding the proposed increase and explaining the reasons for such proposal." The notice incorrectly stated "House Bill #1" whereas it should have stated "House Bill #471 of the acts of the General Assembly of 1966." Approximately 20 persons attended, asked questions, and participated in the discussion.

It is said in 84 C.J.S. Taxation § 359, p. 692: "Every statutory requirement with respect to notice must be observed." Cox v. Drainage Dist. No. 27, 208 Ark. 755, 187 S.W.2d 887 (1945), held that where the statute required notice of the steps in proceedings for a tax levy, the publication was jurisdictional. Also see State v. Man-

hattan Silver Min. Co., 4 Nev. 318 (1868). We reached that conclusion with respect to KRS 100.048 which required that notice be published before a master zoning plan was adopted. Louisville & Jefferson County Planning & Zoning Comm. v. Ogden, 307 Ky. 362, 210 S.W.2d 771 (1948). In O'Hara v. City of South Fort Mitchell, Ky., 290 S.W.2d 455 (1956), in which an annexation ordinance was under attack, we held that "The requirement of publication in proceedings of this nature is jurisdictional, and a material noncompliance will invalidate the proceedings."

The trial court found that the notice sufficiently complied with the statute, predicating the conclusion on the wide publicity "* * * with headlines on the front page of the local county papers." In Vincent v. City of Bowling Green, Ky., 349 S.W.2d 694 (1961), we wrote: "Appellee urges that there was a substantial compliance with the statutory provisions since the public was kept informed step by step through the media of news items on the first page of the daily newspaper. In answer to a similar contention, it was held in Ashcraft v. Estill County, Ky., 290 S.W.2d 31 (1956), that news articles cannot be substituted for notices required to be published by law." Kenton County v. Ankenbauer, Ky., 293 S.W.2d 873 (1956), reaffirmed *Ashcraft* and continued " * * * that mere news articles cannot be accepted as a substitute for the official notice required by law, but we have here a series of paid newspaper advertisements that for all practical purposes fulfilled the requirements of the statute, plus such a deluge of publicity that the voters could not have escaped being informed of the election."

The following is quoted from Stagg v. Board of Education, Ky., 303 S.W.2d 313 (1957):

"The appellant further maintains that the election was invalid because of lack of proper notice. The statute, KRS 160.477, provides that 'reasonable notice of the election shall be given.' The order of the fiscal court calling the election, for March 9, directed that notice be

published in the local newspaper on February 26, March 1, March 5, and March 7, and that notice be posted at designated public places in the school district not later than February 21. Actually, the official notice was published in the newspaper only on March 1 and March 7, and was not posted at all. However, large quarter-page advertisements (paid for by the school board) were carried in the newspaper for six consecutive days, from March 3 through March 8, and 2,000 handbills were distributed throughout the district. Public meetings for discussion of the question were held under sponsorship of the P. T. A., and there was some radio publicity.

"Under the decisions in Pelfrey v. Board of Education of Jackson Independent School District, Ky., 273 S.W.2d 353; Kenton County v. Ankenbauer, Ky., 293 S.W.2d 873, and Queenan v. City of Louisville, 313 Ky. 816, 293 S.W.2d 1010, we cannot say that the lack of strict compliance with the notice requirements as specified by the fiscal court was such as to invalidate the election. It appears that as an actual fact, reasonable notice was received by the voters. However, we again say, as we did in the Pelfrey case, that the safer practice would be to comply with the order of the fiscal court."

◾ From the cited cases it will be seen that wide publicity is not a substitute for statutory compliance, but when coupled with a notice which substantially follows the legal requirements the notice may be held valid. Cf. Lyon v. County of Warren, Ky., 325 S.W.2d 302 (1959). Here the notice appeared where and when required and stated the time and the place when and where the Board of Education would hold a "public hearing" to which "all interested parties are invited." The purpose of the meeting was included. The words "public hearing" have been defined "as meaning 'the right to appear and give evidence, and also the right to hear and examine the witnesses whose testimony is presented by opposing parties.'" Mayfield Gas Co. v. Public Service Commission, Ky., 259 S.W.2d 8 (1953). We conclude that there was substantial compliance with the notice requirement of KRS 160.603 (although the safer practice would have been to follow the statute with exactness) supported by the front page news. Cf. McDonald v. Whallen, Ky., 415 S.W.2d 840 (1967).

◾ Appellant contends that adopting a resolution making the levy at the meeting of the fiscal court on July 2, 1968 and implementing it by amendment at the August 20, 1968 meeting was a violation of the enabling statute. The amendment did not change the amount, nature or purpose of the levy. We know of no requirement that the entire project be launched at the same meeting and it was held in Commonwealth v. Chesapeake O. & S. R. Co., 141 Ky. 633, 133 S.W. 559 (1911), that it was proper to amend the ineffectual levy of a county tax.

◾ Appellant also complains that the resolution and order is vague and uncertain in many respects because a multitude of situations are not sufficiently covered. Tax laws are seldom initially drafted in a manner which eliminates all future controversy. We hold the resolution as amended not to be "void for uncertainty."

◾ Appellant contends that the General Assembly has delegated "* * * to the fiscal court (and the fiscal court has sought to exercise) the legislative power to determine who shall pay the tax, how the tax shall be imposed, etc. * * *" all contrary to § 29 of the Kentucky Constitution. He also charges that "[t]here is an unconstitutional delegation of authority to the Finance Officer" authorized by, and appointed pursuant to, KRS 160.646. No authority is cited to support either contention. We are not pursuaded by these arguments.

The judgment is affirmed.

All concur except MONTGOMERY, C. J.